24049. BRAWNER *et al. v.* BUSSELL.

STEPHENS, J. 1. The right of a parent, as a father, who is entitled to the services of his minor child, to recover for the loss of such services, caused by the negligent homicide of the child, is a right at common law. It is not essential to this right of the parent that the child should at the time of its death be actually rendering services to the parent. The parent's right to the services where the child is capable of rendering them is sufficient as a basis for the parent's right of action for the loss of the services. Civil Code (1910) § 4412; *Amos v. Atlanta Railway Co.,* 104 *Ga.* 809 (31 S. E. 42).

2. A minor child who but for a mentally deranged condition is capable of rendering valuable services to his parents is nevertheless, where his condition is temporary and, will be removed before he reaches majority, capable during minority of rendering such services. Where a minor nineteen years of age, who is temporarily mentally deranged, is confined in a hospital for treatment for such condition, which is diagnosed as a "dietary deficiency case" and will with proper treatment and care recover within fifteen days to two months, and therefore before he reaches majority, and where but for this mental condition he is capable of rendering valuable services, he is, during the cont'nuance of his minority, capable of rendering valuable services. Although his recovery is more or less uncertain and speculative, yet where it is such that he should, with proper treatment, recover before he reaches majority, it is a question of fact whether he would recover within this period. A parent entitled to the minor's services may recover for the loss of such services negligently caused while the child is in the temporarily insane condition described.

3. Where a minor child was, before the illness indicated, capable of doing such work as painting floors, repairing furniture, driving and caring for an automobile, mowing and raking a lawn, repairing and installing electrical fixtures, keeping up a poultry yard, building chicken coops, repairing fences, pruning and caring for fruit trees and shrubbery, he was capable of performing valuable services. *Crenshaw v. L. & N. R. Co.,* 15 *Ga. App.* 182, 185 (82 S. E. 767); *Shields v. Yonge,* 15 *Ga.* 349 (60 Am. D. 698); *Allen v. Atlanta Street Railroad Co.,* 54 *Ga.* 503.

4. A private hospital in which a patient is placed for treatment owes the duty of safeguarding and protecting the patient from any known or reasonably apprehended danger from himself which may be due to his mental incapacity, and to use ordinary and reasonable care to prevent such danger, and where the patient, while in the care of the hospital is, with the knowledge of the authorities in charge of the hospital having

him in care and charge, temporarily insane and in a mental condition where he may possibly do injury and harm to himself or others, and the authorities negligently fail to so care for and keep the patient, and by reason thereof he has access to a knife or other sharp instrument, which he uses in killing himself by cutting his throat, the authorities of the hospital are guilty of negligence as respects their duty to keep and care for the patient which is the proximate cause of the homicide, and are liable in damages therefor to the person legally entitled to recover. *Emory University* v. *Shadburn*, 47 *Ga. App.* 643 (171 S. E. 192).

5. Upon an application of the above rulings, in a suit by the father of a minor son against two defendants, the petition, in which the above facts were alleged and in which it was alleged that one of the defendants was engaged in conducting the hospital or sanitarium, which was for the treatment of patients suffering from nervous and mental diseases, and that he, for compensation, undertook to guard and properly nurse, protect and care for the plaintiff's minor son, and that the other defendant was actually in charge of the hospital or sanitarium as medical superintendent and responsible for the treatment and care of all patients placed in the hospital or sanitarium, and that as a result of their negligence in failing to watch over and care for the plaintiff's minor son, who they knew was mentally deranged and likely to produce injury to himself and others while in his mentally deranged condition, and in permitting him to secure possession of a knife or sharp instrument with which he inflicted a wound upon himself which caused his death, set out a cause of action against both defendants. The petition is not subject to demurrer or motion to dismiss in the nature of a general demurrer upon the ground that the defendant secondly referred to was at the time and under the circumstances alleged acting as the agent and servant of the other defendant, who conducted the hospital or sanitarium, and that the acts of negligence chargeable against such agent who it is claimed was an agent and servant were acts of nonfeasance only, or were acts of sub-agents, for which he was not liable. *Southern Railway Co.* v. *Grizzle*, 124 *Ga.* 735, 737 (53 S. E. 244, 110 Am. St. R. 191).

6. The petition set out a cause of action, and there was no misjoinder of parties or actions.

7. The court did not err in overruling the demurrer.

*Judgment affirmed. Sutton, J., concurs. Jenkins, P. J., dissents.*

Decided February 23, 1935. Rehearing denied March 2, 1935.

*Bryan, Middlebrooks & Carter, Morris & Morris,* for plaintiffs in error.

*Blair & Gardner,* contra.

Jenkins, P. J., dissenting. A mother sued for the full value of the life of her minor son. The father brought a separate suit for the loss of the son's services. I agreed to the decision this day

rendered in the companion case of the mother, wherein the court held that under the facts alleged the mother would not be entitled to recover in the statutory action for the full value of the life of her son, basing my opinion, as my brethren did, largely upon the decision in *Smith* v. *Hatcher,* 102 *Ga.* 158, 159 (29 S. E. 162), wherein it was held that in order for a parent to recover on such a claim, the child must not only have been capable of contributing to the parent's support, but must have been actually doing so at the time of the homicide. As was set forth in the *Smith* case, the right of the parent to recover for the full value of the life of the child does not depend upon whether the child had been contributing to the parent's support, or whether he might at some future time do so, but the test is whether he was actually doing so at the time of his death. I am inclined to think, however, that the language used by Judge Lumpkin in that decision was not intended to be construed absolutely literally so as to wholly preclude any and all recovery where a child was not actually contributing to the parent's support at the moment of the homicide. In other words, I do not believe that some trivial, insignificant, and manifestly temporary disability, which might and did prevent contribution at the precise time of the homicide, should be reasonably taken to preclude a recovery. It appears, however, that in the suit by the mother the son not only was not making contributions to the mother, but was incapable of doing so; and that whether or not he would have recovered from his grave condition of insanity, during which he committed suicide while confined in the defendant's sanitarium, so as to be able to resume his previous contributions, was necessarily a matter of pure speculation.

As I see it, the same judgment is necessitated in the instant suit by the father as that rendered in the suit by the mother. The only difference between the requirements in a suit for the full value of the life of a child and a suit for lost services is that in a suit for the value of the life it must be shown that the child was actually contributing and not merely capable of contributing, whereas in a suit for services all that is necessary is to show that the child was capable of contributing, irrespective of whether the parent actually claimed and received the benefit of the services. This is clearly brought out in *Amos* v. *Atlanta Ry. Co.,* 104 *Ga.* 809, cited in the majority opinion in this, the father's, suit. In the *Amos* case, the

Supreme Court said: "From authority then, as well as reason, we think that when the parent has not lost dominion or control over the child, but still has the power to claim its services during minority, he can recover for lost services resulting from a tort *committed at a time when the child had the ability or capacity to render service.*" (Italics mine.) It therefore appears to me that, if by reason of the grave nature of the disability, the child was incapable of making contributions to the mother at the time of the homicide, he was equally incapable of rendering services to the father. The averments in both cases are the same. The mother can not recover, because, on account of the serious disability, the son not only could not but did not contribute to her support. The father can not recover, because, on account of the same disability, the son was incapable of rendering services. In this, the father's, case, no question arises, as in the *Amos* case, as to the right of the father to recover despite his temporary loss of dominion over his son, where it appeared that the son was nevertheless capable of rendering services. Both in the mother's suit and in this suit the petition shows that the son was incapable of rendering services at the time of the homicide. Because of this incapacity, he failed to contribute to his mother's support, and therefore she could not recover. Because of such identical incapacity, he was incapable of rendering services, and therefore the father could not recover. In a suit for services, it is just as essential that the decedent be actually capable of rendering services at the time of his death as it is essential in a statutory suit for the value of the life to show that the decedent was then actually contributing to the plaintiff's support. See *Southern Ry. Co.* v. *Covenia,* 100 *Ga.* 46 (29 S. E. 219, 40 L. R. A. 253, 62 Am. St. R. 312); *Allen* v. *Atlanta Street Ry. Co.,* 54 *Ga.* 503; *Crenshaw* v. *L. & N. Ry. Co.,* 15 *Ga. App.* 185 (supra); *Owens* v. *Anchor Duck Mills,* 34 *Ga. App.* 315 (2-4) (129 S. E. 301). The same conclusion would seem inevitably to follow in the instant case of the father as in the case of the mother.