### 35487. ADAMS *v.* RICKS.

DECIDED JANUARY 27, 1955—REHEARING DENIED FEBRUARY 18, 1955.

*Phillips, Johnson & Williams,* for plaintiff in error.

*Nall, Sterne & Miller, A. Paul Cadenhead, Kermit C. Bradford,* contra.

TOWNSEND, J. ■ ■ Prior to 1952, the law was to the effect that, where a party submitted to a ruling sustaining a demurrer to pleading by filing an amendment which attempted to meet the grounds of demurrer, he acquiesced in the previous ruling, which then became the law of the case (*Walraven* v. *Walraven,* 76 *Ga. App.* 713 (1), 47 S. E. 2d 148), and an amendment thereafter filed which added nothing new or of substance, but was merely an elaboration of the averments of the original petition, should accordingly be stricken because the first ruling, whether right or wrong, was necessarily controlling until reversed. *Darling Stores Corp.* v. *Beatus,* 197 *Ga.* 125 (28 S. E. 2d 124); *Hayes* v. *Simpson,* 83 *Ga. App.* 22 (62 S. E. 2d 441). In 1946, § 81-1001 of the Code of Georgia of 1933 was repealed and re-enacted. Ga. L.

1946, p. 761. In 1952 (Ga. L. 1952, p. 243), the then-existing Code section was amended by adding thereto this provision: "Where the court sustains any or all demurrers to pleading, and allows time for the filing of an amendment, such judgment or order shall not be subject to exception or review, but the court shall render a judgment on the sufficiency of the pleadings after the expiration of the time allowed for amendment which shall supersede the judgment allowing time for amendment. Parties shall have the right to amend at any time prior to the rendition of such latter judgment. Nothing herein shall be construed to abridge the right of amendment otherwise existing." Under this Code section as so amended all judgments on demurrer prior to the final judgment are not final in character, are not reviewable, and accordingly do not constitute the "law of the case" so as to prevent the court from considering the petition as finally amended on its merits as subject to a fresh adjudication. *Weinstein* v. *Rothberg*, 87 *Ga. App.* 94 (73 S. E. 2d 106) ; *Browning* v. *Hirsch*, 87 *Ga. App.* 576 (75 S. E. 2d 43) ; *Cates* v. *Owens*, 87 *Ga. App.* 270 (73 S. E. 2d 345). Nothing to the contrary is held in the cases cited by the plaintiff in error. *Blau* v. *McCall Corp.*, 85 *Ga. App.* 814 (70 S. E. 2d 92), although decided after the passage of the act of 1952, dealt with orders passed before the passage of that act, and was accordingly decided under the law applicable at that time. *Northern Assurance Co.* v. *Almand*, 210 *Ga.* 243 (78 S. E. 2d 788), dealt with two final orders in two cases involving the same subject matter, the first order being res judicata as to the second. Since the objections to the various amendments here are all on the ground that previous rulings of the court must be held to be the law of the case, right or wrong, in such manner as to prevent the allowance of an amendment dealing with the same subject matter, it follows that these objections were properly overruled.

It is contended, however, that the act of 1953 (Ga. L. 1953, p. 82), which further amended Code § 81-1001, constituted a repeal by implication of the amendment of 1952, supra, for the reason that the last legislative enactment made no reference to the 1952 amendment. The 1953 amendment added the following language to Code § 81-1001: "Either party who amends or attempts to amend his petition or other pleadings in response to

order or other ruling of court shall not be held to have waived his objection to such order or ruling but may thereafter take exception thereto as in other cases." Obviously, the sole purpose of this amendment was to do away with a rule of law of long standing, to the effect that, when a pleading was amended pursuant to an order on demurrer, the act of thus amending the pleading constituted acquiescence in the order so as to waive the right of the pleader to except thereto, thereby constituting such order the law of the case. It would apply, therefore, only to cases where, prior to its passage, the amendment constituted acquiescence and precluded the pleader from excepting to the order after having amended to meet it. Thus, it would not apply to intermediate orders, which by the terms of the 1952 act were non-reviewable and became functus officio when a final order on pleadings was passed after a fresh adjudication thereof. Such fresh adjudication and such final order are required under the 1952 act whether an amendment is actually filed or not. The 1953 act made no reference to orders of the kind contemplated under the 1952 act, which, because superseded by a subsequent ruling, do not constitute the law of the case; and it must therefore be presumed that it was not the purpose of the 1953 act to revitalize such orders so as to make them subject to review.

Repeals of statutes by implication are not favored, and nothing short of irreconcilable conflict between two statutes will work such repeal. *Walker* v. *City of Rome*, 16 *Ga. App.* 817 (86 S. E. 658); *Moore* v. *State*, 150 *Ga.* 679 (104 S. E. 907); *Britton* v. *Bowden*, 188 *Ga.* 806 (5 S. E. 2d 47). Such conflict results where it appears that the last legislative act was intended to cover the whole subject matter of the particular legal field, and it appears that certain parts of the former law were intentionally omitted in the revision (*Hardy* v. *State*, 25 *Ga. App.* 287, 103 S. E. 267; *Thompson* v. *Georgia Power Co.*, 73 *Ga. App.* 587, 37 S. E. 2d 622), but such is not the case here. On the other hand, the general rule is that, where a prior statute is re-enacted without reference to an intermediate amendatory statute, and there is no conflict between the intermediate and last enactments, but it does not appear that the last act is an exhaustive treatment of the subject matter, the intermediate statute is not repealed by implication. Endlich, Interpretation of Statutes, § 194; *Horn* v. *State*,

114 *Ga.* 509, 40 S. E. 768; Charleston Heights Co. *v.* City Council of Charleston, 138 S. C. 187 (136 S. E. 393); In re Ferguson's Estate, 325 Pa. 34 (189 Atl. 289); George *v.* City of Asheville, 80 Fed. 2d 50 (103 A. L. R. 568). Accordingly, the 1952 amendment must be given effect.

■ ■ Count 1 of the petition as finally amended alleges in substance that the plaintiff had suffered a nervous breakdown; that his sister registered him in Peachtree Sanitarium and paid an advance deposit for him; that his physician administered an electric-shock treatment that day and five subsequent treatments; that the defendant was well aware that shock treatments throw patients into convulsions and leave them, following the treatment, in a state of unconsciousness or semi-consciousness; that occasionally patients suffer hip fracture due to the shock and convulsion, and the defendant was required to anticipate that such occurrence might result; that, during the last shock treatment, the plaintiff suffered fractures of both hips; that, while semi-conscious, he roused to find himself in the room unattended; that he thought there was a buzzer or call button and, in attempting to find this to call an attendant, he lost control and fell off the bed, further fracturing and injuring his hips; that there were no guardrails on the bed, and the defendant was required to anticipate that he might be injured as a result of his semi-conscious state, without attendants and on a bed with no guardrails; that he suffered excruciating pain and lay helpless on the floor approximately 30 minutes, calling out and beating his hands, before he was discovered by a porter; that he suffered permanent injuries, which resulted, after the performance of four operations on his fractured hips, in total impairment of the use of his legs, loss of earnings and pain and suffering, which proximately resulted from the defendant's negligence, (a) in failing to provide guardrails on the bed, the defendant knowing that the plaintiff was receiving shock treatments, and when coming out of said treatment would be in an irresponsible state; failing to have someone in constant attendance; leaving the plaintiff unattended, when required to anticipate that injury might result from his motions while in the semi-conscious state; failing to have the room wired with a signal to enable the plaintiff to summon a nurse, in violation of statute, and in allowing the plaintiff to fall after having left him unattended and with no safety precautions.

Count 2 alleges that he was removed from the floor after his fall, without examination, by lifting and pulling at his legs and further splintering and fracturing them, which was alleged as negligence on the part of the defendant's employees, and he seeks recovery for pain and suffering thereby occasioned. Count 3 seeks damages for pain and suffering occasioned by the employees of the defendant, after he was discovered on the floor, in failing to call a physician to examine him, although he insisted upon seeing one, and in undertaking to place him in a hot bath and manipulate his legs and hips, moving the splintered bones, and burning his skin with hot water. Count 4 sets out that, after the hot bath, he was subsequently given a cold bath, with further manipulation of his injured hips, and in spite of his insistence that a doctor should first examine him, and he seeks damages for pain and suffering on this account. Count 5 seeks damages for pain and suffering for the alleged negligence of the defendant in moving him by means of a wheel chair to an automobile, forcing him to sit upright in the automobile and further manipulate and injure his legs and hips, while being taken to another place for the purpose of making X-rays, and not moving him by ambulance, in violation of statute.

In *Emory University* v. *Shadburn*, 47 *Ga. App.* 643 (171 S. E. 192), it was held: "A private hospital in which patients are placed for treatment by their physicians, and which undertakes to care for the patients and supervise and look after them, is under the duty to exercise such reasonable care in looking after and protecting a patient as the patient's condition, which is known to the hospital through its agents and servants charged with the duty of looking after and supervising the patient, may require. This duty extends to safeguarding and protecting the patient from any known or reasonably apprehended danger from himself which may be due to his mental incapacity, and to use ordinary and reasonable care to prevent it." In *Stansfield* v. *Gardner*, 56 *Ga. App.* 634 (193 S. E. 375) it was held, under this rule, that it was a jury question as to whether the hospital should be required, in the exercise of ordinary and reasonable care, to anticipate that the defendant, a mental patient, would jump or fall from a second-story lobby, and to have an attendant with him at the moment of his injury. In *Robertson* v. *Executive*

*Committee of The Baptist Convention,* 55 *Ga. App.* 469 (190 S. E. 432), it was held error to dismiss a petition alleging that the plaintiff, while in a helpless condition, was permitted to fall from a wheel chair. In *Brawner* v. *Bussell,* 50 *Ga. App.* 840 (179 S. E. 228), it was held that it is negligence for a hospital, having in charge a mental patient who may harm himself, to fail to keep him from access to a sharp instrument, which he uses to kill himself, and that it is the defendant's duty to protect the patient "from any known or reasonably apprehended danger from himself which may be due to his mental incapacity, and to use ordinary and reasonable care to prevent such danger." The petition here sufficiently shows knowledge on the part of the defendant sanitarium, through its agents and employees, of the fact that the plaintiff had just had a shock treatment and of the fact that such treatments result in patients being in a semi-conscious state; and thus is sufficient to make a question for jury determination as to whether the plaintiff's injuries resulted from a lack of care for his safety on the part of the hospital, and as to whether the defendant should have anticipated injury to the plaintiff if he was left unattended, on a bed without guardrails or other safety device, and with no signal for summoning aid, while in the condition they knew him to be in. The general demurrers to the various counts, setting out that no cause of action is stated, and that the defendant had no reason to anticipate that the plaintiff might fall from his bed, are therefore without merit. In view of the factual allegations that the plaintiff was, as a result of the shock treatment, in a semi-conscious or unconscious state, the demurrer on the ground that the record shows his own negligence to be the proximate cause of his injuries is also without merit. In like manner, general demurrers to counts 2, 3, 4, and 5, alleging subsequent acts of negligence in moving the plaintiff at various times and manners while his hips were broken, in scalding him with hot water, and so on, were properly overruled as these, too, are questions of fact for jury determination.

The petition as originally filed, and as amended the first time, alleged that the fall of the plaintiff to the floor fractured his hips. This was stricken, and it is now alleged that the plaintiff's hips were fractured as the result of convulsions induced by shock treatment, but that this crack fracture was aggravated and

splintered by reason of the fall. There is no merit in the contention that a new cause of action is thereby set out. The same transaction and legal wrong are alleged in both cases. The same negligence is declared upon in the amendment as in the original petition. There is no attempt to "plead any other or different wrong from that originally set forth." See *Community Gas Co. v. Williams*, 87 *Ga. App.* 68, 74 (73 S. E. 2d 119). Accordingly, a demurrer on the ground that a new cause of action was set forth was properly overruled.

■ The numerous remaining grounds of special demurrer have been considered, and are without merit.

The trial court did not err in overruling the demurrers to the petition as amended and in overruling the objections to the allowance of the various amendments.

This case was considered by the whole court as provided by the act approved March 8, 1945 (Ga. L. 1945, p. 232.)

*Judgment affirmed. Felton, C. J., Gardner, P. J., Carlisle, Quillian, and Nichols, JJ., concur.*