37128. EMORY UNIVERSITY *v.* LEE.

Decided May 14, 1958—Rehearing denied May 30, 1958.

*Walter McCurdy, James A. Branch, Thomas B. Branch, Jr.,* for plaintiff in error.

*Wilson, Branch & Barwick, John W. Wilcox, Jr., M. Cook Barwick, B. Hugh Burgess,* contra.

QUILLIAN, Judge. ■ For the sake of clarity and convenience of expression the plaintiff in error, Emory University, will be referred to as the defendant, and the defendant in error, Clarence W. Lee, as the plaintiff, the parties having occupied those respective relations to the case in the trial court.

The defendant relies upon only one of the three general grounds of the motion for new trial, that the verdict was not supported by evidence.

The defendant contends, first, that its employees who were charged with the care of the plaintiff on the occasion when he was injured, according to the undisputed evidence, exercised ordinary care in attending him, and their treatment of him was in accord with usual and accepted practices of the medical profession; secondly, that the evidence adduced on the trial did not support the essential allegations of the petition that the plaintiff, while a patient in the defendant's hospital and for several hours prior to the incident resulting in his injuries, "had no knowledge of what was going on about him and was incapable of making any decision whatever and was incapable of controlling his actions so as not to cause himself or others bodily harm," and that the defendant through its employees, was aware of his mental condition and for that reason due him special care to prevent him leaving his bed and being injured.

The first of these contentions is without merit, because the expert medical testimony on this point was in conflict.

It was the opinion of several doctors that the defendant's employees, the intern, nurses and orderly who were charged with the plaintiff's care treated him in accord with the usual and approved medical practices in not restraining him and allowing

him to arise from his bed, depart his room, roam through the corridors some 65 to 80 feet, enter a utility room and to stand upon a chair from which position he fell or jumped through a window. This opinion was predicated upon the doctor's view that the plaintiff suffering from a myocardial infarction must not be physically restrained. This view was concurred in by Doctors Kitchens, Heard, Shinall and Cunningham.

It was the opinion of Dr. Shinall that it was better for a patient with a heart condition to be permitted to fall 20 feet from a window and sustain a broken thigh and other injuries than to physically restrain him.

Dr. Edward K. Russell, a witness for the plaintiff testified in answer to questions propounded to him in reference to restraint of patient suffering from a myocardial infarction incapable of exercising discretion: "May I amend that answer by saying that normal—that recognized standards of medical practice, I think I recall that—recognized standards of medical practice would indicate that the proper thing to do in such a situation is to get the patient back to bed with as little harm or stress to him as possible. Q. How would you get the patient back in bed? What method would ordinary medical practice call for? A. I think, I answered that a moment ago when I stated that the thing to do would be to try to replace him in bed by using persuasion, drug, and, if necessary, physical restraint, probably in that order. Q. In this order, in other words, persuasion first, by speaking with him? A. Yes, sir. Q. Second by sedation? A. Yes, sir. Q. And third by physical restraint? A. That is correct. Q. What type of sedation would be used? A. I can't answer that question without knowing a little bit about previous medication and the patient's response to medication. Q. It would be according to a particular case, then? A. It would be according to this particular case we are assuming. Q. Now, assuming that after you go in the room and find the patient getting up out of the chair with the stool in his hand, and assuming the facts asked in the previous question that you answered, that the patient started out of the room, what would you then do, or what would be normal medical practice to then do? A. Had it not

already been done, certainly, normal medical practice would have us call for help. If help is already present, I think to use such help—correction—if help is already present, normal medical practice, I am sure, would indicate that the use of such help in preventing the patient from walking out of the door with the stool would be proper. Q. And if persuasion and medication would not help, then physical restraint would be necessary? A. Again, this gets into the realm of how disturbed this patient is. Perhaps the doorway is not the place at which you restrain the patient, but, depending upon the degree of activity and the success you had with persuasion or with drugs by that time, physical restraint somewhere along the line here would be in order. Now, I can't, on an assumed problem of this sort, I can't say whether the doorway is that point or not. Q. Well, assuming the patient left the room and began walking up the hall, would physical restraint be necessary then in normal medical practices? A. I think so. I think so because in so doing, his physical activity certainly increases by virtue of the fact he carries and waves a stool in addition to the fact he is doing more walking than we like for acute myocardiac infarctions to do, and I think at the point he begins to do both of those, at least by that point, physical restraint may be well in order. Q. Normal medical practice would call for restraint somewhere along the the line, is that your testimony? A. Yes. Q. It is advisable for a patient to, who has had a great deal of heart damage in the beginning, is it advisable for three—we will say for a doctor, oxygen therapist, orderly and nurse—four of them to converge on that patient and to physically pick him up and put him back in bed? Rather than to what? Q. I mean rather than to let him walk down the hall and say tire himself by his own exertion so he could then be returned to bed? A. Waving a stool? Q. Yes. A. If efforts during such a plan you have are made to calm his fears or persuade him to the right place is—for him is in bed, I think it might be proper under those circumstances, three people, four people. Q. After the efforts to persuade him to return? A. If those efforts—Q. Had been exhausted. A. If those efforts are continued, I think it might be the proper thing to do. Q. But you wouldn't say whether

that would be at the end of twenty feet, fifty feet, or a hundred feet; it would be for the exercise of the judgment of the people on the spot at the time? A. Yes, sir, it is someone's judgment and the person who is responsible is the man there at the time. Q. I believe you stated also that Mr. Lee's condition as the result of his heart condition alone was sufficient to make him totally disabled? A. Approaching one hundred percent." The doctor also expressed the opinion that the plaintiff should not have been left alone in his room.

Now it appears that Dr. Kitchens while sworn by the plaintiff, testified under Code (Ann.) § 38-1801 as the defendant corporation's employee, but the legal effect of his testimony conflicting with that of Dr. Russell would have been the same if they had both been sworn as the plaintiff's witnesses generally.

The rule is well established that neither the plaintiff's recovery nor his right to prevail as to a particular issue is defeated because there is a material conflict in the testimony of his witnesses and the version given by some of them does not support his cause or contention. *Henry* v. *Etowah Dredging Co.*, 141 *Ga.* 406 (81 S. E. 197).

Had the testimony of the expert witnesses been entirely in harmony on the question of whether it was the accepted and usual practice of the medical profession not to physically restrain a cardiac patient in a situation such as was shown by the evidence, a finding that the treatment of the plaintiff measured up to those standards would not have been demanded. This is true because all the physicians were in agreement and testified that the recognized practices. of the medical profession would have required that there be an effort to restrain the plaintiff by persuasion.

There was no evidence that any of the defendant's employees who were charged with the care of the plaintiff undertook to persuade him to return to his room or not to roam through the hall or enter the utility room where the window from which he fell was situated.

Again while the medical evidence in the case was in accord that in a situation where the patient is apt to do himself harm, if not kept in bed, the sides of the hospital bed extending above

the level of the bed, should be kept up, the undisputed testimony of the private nurse procured by the defendant to attend the plaintiff, was that Dr. Kitchens after administering medication to him left the rail of the plaintiff's bed down.

The second contention of the defendant is not sound, because there is ample evidence in the record to support the allegation that the plaintiff was in such mental state that he had no knowledge of what was going on about him and was incapable of making any decision whatever and was incapable of controlling his actions so as not to cause himself or others bodily harm and that the defendant's employees were thoroughly informed of his condition in ample time to have prevented the event resulting in his injuries.

However, the defendant contends that it was not enough that the defendant's employees were aware that the plaintiff was in such deranged mental condition that he might do himself harm, but that in order for the defendant to be liable it must be shown by the evidence that there were circumstances from which the jury could have reasonably anticipated that an event similar to that which resulted in the plaintiff's injuries might occur.

The correct rule is that in order for a party to be held liable for negligence, it is not necessary that he should have been able to anticipate the particular consequences which ensued. It is sufficient if, in ordinary prudence, he might have foreseen that some injury would result from his act or omission, and that consequences of a generally injurious nature might result. *Wright v. Southern Ry. Co.*, 62 *Ga. App.* 316 (3) (7 S. E. 2d 793).

The evidence demanded a finding that the plaintiff was mentally deranged and incapable of controlling his actions for several hours prior to the event resulting in his injuries. The plaintiff himself so testified and was corroborated by the testimony of the defendant's witnesses who were present just before and at the time he was injured. They described his purposeless movements, his agitation, bewilderment and unfounded fears that he was about to be killed, and frankly testified to his obvious mental disorder for several hours previous to the immediate events leading to his fall from the window, as well as to his menacing attitude and frenzied behavior as he entered and

proceeded along the corridor. The hospital records were of the same import.

Three doctors who had not seen the plaintiff for hours before his mental distress and frantic conduct became obvious testified that they did not observe anything in his conduct that indicated he might do himself harm. The testimony did not relate to the same time at which other witnesses testified the plaintiff was in the condition and behaved in the manner described in the preceding paragraphs of the opinion. The doctors were not asked and ventured no opinion as to whether the temporary insanity of a person who appeared and acted in the manner attributed to the plaintiff by witnesses who were present with him at the time of his injury and for several hours prior thereto would be apt to do himself harm, or might well be expected to fall from a window if not restrained.

Jane Frances Harris, the floor nurse, also gave evidence that she did not apprehend that the plaintiff might do himself harm. Her testimony was inconsistent. The record discloses that it was she who informed the superior or head nurse of the hospital and Dr. Kitchens that the plaintiff needed special care on account of his mental condition and warned the nurse, Mrs. Underwood, not to leave him for a minute, She explained that she merely feared he might injure himself in getting out of bed. Yet, she further testified that when he brandished the stool in the hallway, she was afraid of him and feared for the safety of other patients.

Dr. Russell in answer to questions testified: "Q. Now, doctor, would you judge that merely because a patient makes purposeless motions, is confused, wants to go home, is sitting in a chair and picks up a stool such as this and brandishes it, and asks a nurse, 'Are you trying to kill me', that that patient was likely to jump out of a window? A. If those actions are not in keeping with his behavior up to that time, the answer is he might jump out of a window or he might turn the bed over or might light fire to the sheets. I think his actions are unpredictable if those things about which you speak are not in keeping with his behavior up to the time which he arrives. Q. He might do anything, is that correct? A. Within the meaning of your question, yes."

The conclusion is inescapable that the proven facts were sufficient to place the defendant's employees on notice that just such event might and probably would occur unless prevented by their especial care of the plaintiff. Compare the cases of: *Emory University* v. *Shadburn,* 47 *Ga. App.* 643 (171 S. E. 192); *Emory University* v. *Shadburn,* 180 *Ga.* 595 (180 S. E. 137); *Brawner* v. *Bussell,* 50 *Ga. App.* 840 (4) (179 S. E. 228); *Gardner* v. *Newnan Hospital,* 58 *Ga. App.* 104, 107 (198 S. E. 122); *Lord* v. *Claxton,* 62 *Ga. App.* 526, 533 (8 S. E. 2d 657); *Piedmont Hospital* v. *Anderson,* 65 *Ga. App.* 491, 497 (16 S. E. 2d 90); *Starr* v. *Emory University,* 93 *Ga. App.* 864, 866 (93 S. E. 2d 399); *Wills* v. *Emory University,* 94 *Ga. App.* 734 (1) (96 S. E. 2d 220).

There was in our opinion sufficient evidence to support the verdict. The trial court properly denied both the motion for new trial and the motion for judgment notwithstanding the verdict.

■ The first complaint of the amended motion for a new trial is that the trial judge denied a motion for mistrial made by the defendant on the ground that the plaintiff and one of the jurors conversed during a recess of the trial.

Ordinarily motions for mistrial because of improper conduct of jurors or parties are addressed to the sound discretion of the trial judge. *Smith* v. *Willingham,* 44 *Ga.* 200; 89 C. J. S. 82, § 457.

The ground sets out the evidence submitted in support of the same. It affirmatively reveals that the plaintiff and the juror did not converse concerning the case or in reference to any matter that could have affected a fair trial of the same. This being a civil case, the trial judge did not commit reversible error in denying the motion. *Ford* v. *Holmes,* 61 *Ga.* 419, 420 (4); *Southwestern R. Co.* v. *Mitchell,* 80 *Ga.* 438, 440 (1) 5 S. S. 490).

Probably the leading case on the subject is *Central R. & Bkg. Co.* v. *Wiggins,* 91 *Ga.* 208 (1) (18 S. E. 187) where it said, "It is no cause for a new trial that one of the jurors took the plaintiff by the arm and assisted him down stairs in the court-house during a recess of the court after the trial was commenced

and before it was concluded. It is not apparent or probable that this act of civility on the part of the juror was or might have been prejudicial to the defendant, although the cause of action on trial was an injury to the plaintiff's spine and nerves which as he contended, disabled him from walking without crutches or other assistance."

■ Ground 2 excepts to the refusal of the trial judge to charge: "If you find that the plaintiff is entitled to recover under the instructions given you, he would only · be entitled to recover damages directly and · proximately resulting from the negligence of the defendant and would not be entitled to recover 'damages for injuries that Mr. Lee sustained from his physical condition prior to such negligence, if any, of the defendant, nor would the plaintiff be entitled to recover damages from the defendant for any injuries that Mr. Lee may have sustained subsequent to said alleged negligence of the defendant but not connected with or resulting from the negligence of the defendant. In this connection the burden is upon the plaintiff to establish by a preponderance of the evidence just which of Mr. Lee's damages and injuries resulted from the negligence of the defendant and which of his injuries and damages were caused by some source other than the negligence of the defendant if any. The burden on the plaintiff in this connection must be established by competent medical evidence."

The ground shows that a timely written request invoking the quoted instructions was presented. The rule is stated in *Cruse* v. *Taylor,* 89 *Ga. App.* 611 (80 S. E. 2d 704), and *Smithwick* v. *State,* 199 *Ga.* 292, 293 (7) (34 S. E. 2d 28), that a request to charge must be correct, even perfect. One of the ingredients of perfection required is that the instructions called for must in their every part be applicable to the issues made by the pleadings and the proof. *Bregman* v. *Rosenthal,* 212 *Ga.* 95, 97 (4) (90 S. E. 2d 561). If the requested charge meets this requirement the mandate of Code § 70-207 should be obeyed and the charge be given in the language requested. *Vaughn* v. *Vaughn,* 212 *Ga.* 485 (1) (93 S. E. 2d 743). If the requested charge is not accurately adjusted to the facts of the case the request must be denied. *Childers* v. *Ackerman Constr. Co.,*

211 *Ga.* 350 (1) (86 S. E. 2d 227). The undisputed evidence adduced on the trial showed that at the time the plaintiff sustained the injuries for which he undertook to hold the defendant liable he. had suffered from a heart disease that rendered him almost totally disabled; that he fell or jumped from a window of the defendant's hospital, the fall resulting in his thigh being broken and other injuries.

There was no contention presented by the pleadings and no evidence submitted on the trial of the case that the plaintiff's heart condition was caused by an injury, or that he sustained an injury of any kind prior or subsequent to the occasion when he was hurt in the fall from the window.

It follows that the instructions contained in the requested charge that, in the event the jury found the defendant to be liable, no damages were to. be awarded for injuries sustained by the plaintiff prior or subsequent to the occurrence of the defendant's negligence, was not adjusted to the pleadings or proof of the case and hence was properly refused. *Housing Authority of Savannah v. Savannah Iron & Wire Works,* 91 *Ga. App.* 881 (1) (87 S. E. 2d 671).

If the charge could be construed as referring to the plaintiff's heart condition as an injury that occurred before and persisted after his fall from the window it would still have been an incorrect statement of the law. This is true because contained in the requested charge was the instruction: "In this connection the burden is upon the plaintiff to establish by a preponderance of the evidence just which of Mr. Lee's damages and injuries resulted from the negligence of the defendant and which of his injuries and damages were caused by some source other than the negligence of the defendant if any. The burden on the plaintiff in this connection must be established by competent medical evidence."

Ordinarily matters of diagnosis are entirely within the realm of scientific facts that may only be established by expert medical testimony. But there is another rule which does not offend the one above stated, as found in *Pilgrim* v. *Landham,* 63 *Ga. App.* 451, 455 (11 S. E. 2d 420), "Results of diagnosis and treatment, if so pronounced as to become apparent, as where a leg or limb

which has been broken is shorter than the other after diagnosis and treatment, may be testified to by anyone competent to testify . . . and where, measured by the method shown by medical witnesses to be negligence, the evidence shows a bad result, it is the province of the jury to say whether the result was caused by the negligence."

It certainly would not require any high degree of intelligence to know that a broken thigh and a broken nose were in no way attributable to a heart condition.

If there had been an issue as to whether the plaintiff's heart condition had been aggravated by the injuries he received in the fall from the window, medical testimony would then have been indispensable in the proof of what injuries were proximately caused by the fall from the window. But there was no claim for damages on account of any aggravation of the plaintiff's heart condition.

The request to charge was properly refused by the trial judge.

■ The third ground of the amended motion for new trial complains of the refusal of the trial judge to charge: "Gentlemen, when you entered upon your service, you and all of the jurors who undertook to serve in that capacity as fellow citizens took an oath of jurors, to which I invited your attention shortly after beginning this charge, that you would well and truly try each cause submitted to you during the present service and a true verdict to make according to the law as given you in charge and the opinion you entertain of the evidence produced to you to the best of your skill and knowledge without favor or affection to either party. You gentlemen are jurors in this case and I am sure you are impartial and conscientious in your consideration as a jury. I also know you will, without any desire to do any injustice to either party, make an earnest effort to find the truth of the case.

"If the plaintiff is entitled to recover, return a verdict in the plaintiff's favor. If the defendant is not liable under the evidence and the principles of law the court has given you, after applying the law to the facts as you find them to be, then find in favor of the defendant. Whatever you find, let it be the truth of the case. The verdict of the jury means the spoken truth of the case.

"The court charges you further that while sympathy is a worthy thing, it has no place in this case, and should in no way color your verdict or sway your verdict; and I charge you that, in the same principle, that prejudice is never worthy under circumstances anywhere, and certainly not in the jury box; it has no place to be considered on any issue in this lawsuit; and I am sure it will in no way color or sway your verdict.

"Cases are not tried on sympathy, but on facts as they are developed from the witness stand, and the evidence in the case and in the charge of the court as the court undertakes, within human limitations, to charge you the correct law of the case."

The ground alleges that the charge was a fair and valid statement of the law invoked by timely written request. However, the instructions requested in bloc or banc were according to the standard stated in *Hayes* v. *State of Georgia*, 58 *Ga.* 35 (9), in part argumentative. "The jury are to decide for themselves what facts are established, and what conclusions, under the law, result from them. The mental convictions of the judge, in respect to the facts, should neither be declared nor intimated. His manner of charging should not be argumentative. The purpose of the charge is to state and explain the law, not to carry on a process of general reasoning."

Under our Georgia system of practice the province of the jury is to ferret out and determine questions of fact through their own process of reasoning.

In *Davis* v. *State*, 153 *Ga.* 669, 680 (113 S. E. 11), it is held that a request to charge which undertakes to "guide the jury in their cause of reasoning upon the facts" is properly refused.

In *Lefkoff* v. *Sicro*, 189 *Ga.* 554 (3) (6 S. E. 2d 687, 133 A.L.R. 738), it is held: "A request to charge, which, though it state a correct statement of law, is in the slightest degree argumentative, is properly refused. Accordingly, while this court may have correctly said, in an opinion discussing a case involving an issue of marriage vel non, that 'marriage is favored by the law; concubinage is odious; when a man and woman are living together as husband and wife, the law will hold them to be such even against strong probability that they are not', it was not error to refuse a request to charge containing such state-

ment. See *Hunt* v. *Pollard,* 55 *Ga. App.* 423 (190 S. E. 71), and cit."

We think the conclusion is inescapable that the requested charge was argumentative and for this reason should not have been given in charge to the jury.

However, the legal questions which would be for decision, if the request had been in proper form are important, and a discussion of them may be profitable. They are succinctly stated; first, whether in view of the fixed rule that the determination of whether cautionary instructions admonishing the jury not to allow sympathy for the parties or prejudice to influence their deliberations is a matter generally addressed to the sound discretion of the trial judge, instructions of that nature may be invoked by a timely written request; secondly, in what situations should the request to charge regarding the avoidance of sympathy and prejudice be granted.

Both parties present to the court a mass of foreign authorities supporting their respective positions as to whether and when cautionary instructions should upon timely request be given in charge to the jury. However, the law on these subjects is settled by decisions of our Georgia courts. In *Powers* v. *State,* 138 *Ga.* 624 (5) (75 S. E. 651), the Supreme Court made it clear that in an appropriate and proper case cautionary instructions as to prejudice should, if requested, be given in charge to the jury. In *Johnson* v. *State,* 128 *Ga.* 102 (2) (57 S. E. 353) there is an equally clear pronouncement that a charge of that nature, though invoked by a written request, should not be given if not adjusted to the facts revealed by the record. The text of the *Johnson* case reads: "Where nothing in the record indicates that any improper circumstance was injected into the case, and the charge of the court fully and accurately instructed the jury on the issues involved, a new trial will not be granted because of the refusal of the court to give a cautionary request, calling the attention of the jury to the heinousness of the charge against the defendant and the difficulty, growing out of the nature of the unusual circumstances of the crime, in defending against the accusation of rape."

In the present case the ground complaining that the request

above quoted was denied does not allege any condition prevailing at the time of the trial, incident occurring during the trial, or any other fact which rendered a charge that the jury not be influenced by sympathy or swayed by prejudice appropriate or proper. The ground does not allege that there was any appeal to the sympathy of the jury. The only fact averred as a basis for a charge cautioning the jury against being influenced in their deliberation by sympathy reads: "Movant avers that the evidence introduced upon the trial of the case and the physical appearance of the plaintiff was such as would normally arouse the sympathy of the jury." The ground does not describe the plaintiff's physical appearance or contain any data from which this court might be informed as to why his appearance would arouse the sympathy of the jury, nor does it set forth or refer to any evidence calculated to arouse the sympathy of the jury.

Here two rules apply. First, a ground must be complete and understandable within itself, and not render it necessary for the court to peruse the record to ascertain the facts necessary to determine whether it shows error. *Jennings* v. *State,* 22 *Ga. App.* 550 (96 S. E. 397); *Elliott* v. *Ga. Power Co.,* 58 *Ga. App.* 151, 160 (197 S. E. 914). Secondly, an allegation in a ground for new trial which amounts to a conclusion of the pleader, unsupported by other allegations showing the conclusion to be correct, presents no factual basis upon which the court may determine the validity of the ground. *Owen* v. *Groves,* 145 *Ga.* 287, 288 (4) (88 S. E. 964); *Durrence* v. *Groover,* 160 *Ga.* 680 (2) (129 S. E. 29).

For the reasons stated the ground does not show whether this is an "appropriate and proper case" for a charge of the nature requested.

■ Ground 4 excepts to an extract from the charge reading: "A patient who pays for services performed by a hospital is admitted to a hospital under an implied obligation that he as a patient should receive such reasonable care and attention for his safety as his condition, either physically or mentally, may require."

The excerpt was but a part of the charge on the subject to

which it related. The entire instructions on the phase of the case to which the criticised excerpt related and given in immediate sequence with the excerpt read: "A hospital which undertakes to care for a paying patient and supervise and look after such a patient is under a duty to exercise such reasonable care in looking after and protecting the patient as the patient's condition, which is known to the hospital through its agents and servants charged with the duty of looking after the patient, may require. The above duty extends to safeguarding and protecting the patient from any known or reasonably apparent danger from himself which may be due to his mental or physical incapacity, and the hospital is further charged with the duty to use ordinary and reasonable care to prevent any danger because of said mental or physical incapacity."

We recognize the rule stated in a line of decisions exemplified by *Morris* v. *Warlick*, 118 *Ga.* 421 (2) (45 S. E. 407), "A charge embodying an erroneous principle and one which has a tendency to injure the losing party is not cured by a subsequent instruction embodying a correct statement of the law, when attention is not called to the previous charge." The ruling of the *Morris* case is not applicable here, for the reason that no incorrect instruction was given in charge to the jury. The excerpt complained of was not erroneous when construed with the whole charge on the subject to which it was related.

The rule that governs the situation presented by the record here is stated in *Essig* v. *Cheves*, 75 *Ga. App.* 870 (6) (44 S. E. 2d 712), "In order to determine whether a portion of the charge of the court is error, the charge must be construed as a whole. *Brooks* v. *State*, 19 *Ga. App.* 45 (90 S. E. 971); *Howard* v. *Macon Ry. & Light Co.*, 17 *Ga. App.* 55 (86 S. E. 256)." In *Cooper* v. *State*, 212 *Ga.* 367 (2) (92 S. E. 2d 864)) is the pronouncement, "In *Wilson* v. *State*, 69 *Ga.* 224, 240 (7), it was said: 'To disconnect a sentence in the judge's charge from what precedes and follows it, gives no just conception of its meaning, import or legal effect, and this court cannot consider it, except as it stands related to the other instructions given to the jury. Thus considered it is not error.' To the same effect, see *Nixon* v. *State*, 75 *Ga.* 862; *Suple* v. *State*, 133 *Ga.* 601 (66

S. E. 919); *Buttersworth* v. *State*, 200 *Ga.* 13 (36 S. E. 2d 301); *Jones* v. *State*, 209 *Ga.* 685 (75 S. E. 2d 429)."

■ Ground 5 assigns as error an excerpt of the charge as follows: ". . . Insofar as the plaintiff, Mr. Lee, was concerned he was required by law to be in the exercise of ordinary care, to protect himself against the consequences of the defendant's negligence, if any, after such negligence was known, or should have been known to him, by the exercise of ordinary care, and the care required of the plaintiff, Mr. Lee, was that care which every person, in his mental and physical condition, would have exercised under the same or similar circumstances.

"And, as stated, the court charges you that Mr. Lee must have been in the exercise of ordinary care for his own safety and protection, and that care, as the court has stated to you, is the care every person, in his physical and mental condition, would have exercised under the same or similar circumstances."

The ground alleges that there was an issue raised by the pleadings as to whether the plaintiff exercised ordinary care to avoid the consequences of the defendant's negligence. The ground is, however, incomplete for it does not set forth or refer to the parts of the record necessary to determine the merits of the contention it seeks to present. In *Maxwell* v. *State*, 97 *Ga. App.* 334 (1) (103 S. E. 2d 162), is the pronouncement, "Since the first special ground of the amended motion for new trial fails to set out therein any of the evidence, and fails to point out such parts thereof by reference to the page number of the brief of the evidence, one or the other of which is necessary to an understanding of the error in accordance with the amendment to Code (Ann.) § 6-901 (Ga. L. 1957) pp. 224, 232) this ground presents no question for consideration by this court."

In this connection it must be remembered that a charge on no issue not made by the pleadings and evidence need be submitted to the jury.

As this court clearly stated in the *Maxwell* case the act of 1957 amending Code (Ann.) § 6-901 did not alter the requirement that a ground of motion for new trial bring to the court's attention the evidence necessary to enable the court to determine whether the ground shows error. Prior to the passage

of the act of 1957 the requirements were to set- forth the evidence necessary for the purpose or state its. substance, while the new rules permit the movant to refer to the parts of the record where the evidence may be found.

If the evidence in the case sub judice conclusively proved that the plaintiff was on the occasion when he was injured entirely bereft of reason, it is obvious that he could not have been held to the exercise of any degree of diligence. Hence, the provisions of Code. § 105-201 would not in such circumstances be adjusted to the issues of the case. A case exactly in line is *Emory University* v. *Shadburn*, 47 *Ga. App.* 643 (12), supra. ·

In passing on the general grounds we held that the evidence demanded a finding that the plaintiff was not mentally capable of controlling his actions on the occasion of his. injury.

The ground is imperfect and the charge is not subject to the criticism made of it.

*Judgment affirmed. Nichols, J., concurs. Felton, C. J., concurs in the judgment.*