CONANT *v.* JONES *et al.*

1. In a suit for damages for breach of contract, in which the petition is not verified by affidavit, the defendant is not required to answer under oath.

2. Where some of the allegations of the original answer are by amendment made more definite and specific, such amendment, setting up no new facts or defense, need not be verified by affidavit.

3. Where the defendant in a suit for breach of contract defends upon the ground that there had been a release or rescission of the contract, and the answer sets out a copy of this release, there is no error in refusing to strike such defense because the names of the witnesses to the release are not given, the answer stating that they are unknown. Nor does the fact that the defendant apparently intends to prove the release by a copy thereof make it necessary that he should plead this defense under oath.

4. The examination of a witness for the defense before the plaintiff has opened his case should not be allowed except by consent, but the error thus committed in the present case was not such as to require a new trial.

5. In the investigation of the value of property it is not error to exclude evidence as to what the owner would be willing to take for it.

6. There was sufficient foundation laid for the introduction of secondary evidence of the contents of the written release relied upon by the defendants.

7. In the present case, there was no error in admitting evidence as to the consideration of the contract, over the objection that "the instrument was under seal and required no consideration."

8. There was ample evidence to justify the trial judge in submitting to the jury the question whether or not there had been a release of the contract sued on.

9. There was sufficient evidence to authorize a charge on the subject of nominal damages. Nor can the plaintiff complain of such charge when he himself requested that a similar instruction be given the jury.

10. There is no error in refusing a written request to charge which is not adjusted to the case.

11. There is no error in refusing a written request to charge, when the charge given on the subject is even more favorable to the complaining party. This is especially true where the charge requested is faulty.

12. Where the jury find for the defendant, the plaintiff can not have been hurt by any error in the court's instructions as to the measure of damages.

13. A new trial is not required because of newly discovered evidence which is of an impeaching character and which, being purely negative, is of little value.

14. The evidence authorized the verdict.

Argued May 24, — Decided July 13, 1904.

Action on contract. Before Judge Fite. Bartow superior court. October 2, 1903.

*Moore & Pomeroy* and *John T. Norris,* for plaintiff.

*T. W. Milner & Son* and *Virgil Jones,* for defendants.

SIMMONS, C. J.  Suit was brought by Conant against C. M. Jones and his son, Virgil Jones, for breach of contract.  The petition alleged, that by written contract under seal, C. M. Jones had given to Conant and Virgil Jones the right, from August 23, 1901, to May 15, 1904, to enter upon certain lands and to mine, remove, and sell any or all of the graphite deposited thereon.  By the same contract the lessees undertook to pay the lessor a royalty of 10 cents per ton upon the graphite which they removed, and agreed that "if for any cause said lessees fail to pay the lessor royalties less than the amount of $200 during either one of the years for which this lease may run, working or not, then this lease may be declared by said lessor null and void."  It was further stipulated that the lessees had the right, at any time during the term of the lease, to cancel the same by paying the lessor $3,500, for which the lessor bound himself to make them title to all of the graphite upon the lands, with the right to enter the lands and mine and remove the graphite.  According to the petition, Conant owned a half interest in this lease and option.  Charging collusion between the two defendants, the petition alleged, that C. M. Jones had, in March, 1902, sold the mineral interest in the leased lands to the Cherokee Chemical Company; that the lease and option had never been recorded, and the Cherokee Chemical Company refused to recognize its validity; that C. M. Jones, at or about the same time, sold a part of the land to Virgil Jones, who sold it to the Cherokee Chemical Company; that before the expiration of the first year of the lease, petitioner tendered $200 as royalties to C. M. Jones, but the latter refused to accept it, though he had never attempted to forfeit or avoid the lease; that this constituted a breach of the contract, for which petitioner prayed damages in the amount of $10,000.  The defendants, without admitting the contract as it was set out in the petition, pleaded a release of the contract into which they had entered with petitioner, alleging that Conant and Virgil Jones, on August 27, 1901, a few days after the execution of the contract, signed a written release, attested by two witnesses, and that the lessor had by a written entry upon the same paper accepted the same and released his lessees from all liability.

On the trial the plaintiff proved the execution of the contract set out in the petition.  He testified, that he and Virgil Jones

were equally interested in the lease and option; that a short time after the execution of the contract, Virgil Jones seemed to lose interest in the venture and did nothing to further it; that plaintiff had never written or signed any release or consented thereto, or told any one that he had done so. There was also evidence that plaintiff, through an attorney at law, had, early in August, 1902, tendered to the lessor $200 as royalties for the first year. Such tender would seem, however, to have been wholly unnecessary; as it was shown that the lessor had prior to this time sold the property and made it impossible for him to perform his contract. The defendants introduced evidence to show, that, before anything was done under the lease, the lessor asked to be released, and the lessees signed a written release, attested by a notary public and another witness; that this release was sent to the lessor, and he wrote upon it an acceptance; that the original release was lost, but that the copy set out in the amended answer was correct; that Conant had acknowledged signing the release at the time of its attestation. There was also evidence as to the value of the lease and option and of the mineral interests to which they related, and evidence that the defendants had conveyed these mineral interests, together with part of the land, to other parties. The jury found for the defendants. The plaintiff moved for a new trial, and, the same being refused, he excepted, assigning error upon the refusal to grant a new trial and upon certain exceptions pendente lite which he had previously filed.

1. The plaintiff moved to strike the defendants' answer, upon the ground that it was not sworn to. The court overruled the motion, and exception was taken to this ruling. The petition was not verified, the answer of the defendants did not deny the instrument sued on, and the answer was not in the nature of a dilatory plea. We are not aware of any provision of law or rule of pleading requiring the defendants to answer under oath in such case, and the motion was properly overruled.

2. There was no error in allowing the amendment to the answer, although it was not sworn to. The original answer had set up generally a release or rescission of the contract sued on. In response to a special demurrer, the amendment set out a copy of the release. It did not "set up any new facts or defense of which notice was not given by the original plea or answer," and

did not come within the provisions of the act of 1897.   Acts 1897, p. 35.   The amendment was germane and was properly allowed.

3. The court did not err in refusing to strike the amended paragraph of the answer on the ground that the names of the witnesses to the release were not given.   The copy was set out, with the statement that the release had been attested by two witnesses but that they were unknown.   Surely the defendants were not to be barred of their right to plead the release because they failed to remember the names of the witnesses who attested it.   Nor did the fact that the defendants were apparently intending to rely upon a copy of the release make it necessary for them to swear to the amendment.   Section 5673 of the Civil Code, cited by counsel for the plaintiff in error, relates to laying the foundation for the introduction of a copy in evidence, and has nothing to do with the form of the defendant's answer.   It is a rule of evidence, not of pleading.

4. Before the plaintiff had introduced any evidence whatever, the court allowed the defendants to open the case by examining Mr. Jake Moore, one of the witnesses for the defense.   This was done over the objections of the plaintiff, and he complained of this ruling in the motion for a new trial.   He also complained of the overruling of his objections to portions of this witness's testimony, on the ground that no sufficient foundation had been laid.   The court certifies that Moore was allowed " to be examined first, that he might return to Atlanta to attend to pressing official business, his testimony being subject to objections, in the light of plaintiff's testimony."   Usually evidence should not be received until the proper foundation has been laid ; for the effort to lay the foundation may prove unsuccessful, and the effect of the evidence upon the jury might not be entirely removed by afterward ruling the evidence out.   When the court does permit such a deviation from the usual and regular conduct of the trial, and the foundation is afterwards properly laid, no harm has been done, and this court will not interfere.   In the present case a proper foundation was afterwards laid for such of the evidence of Moore as would otherwise have been admissible.   The admission of the evidence was, therefore, not error.   The court however, went further than merely allowing the defendants to introduce one part of their evidence in advance

of another part which it should regularly have followed. They were allowed to open the case by examining one of their witnesses, although the plaintiff, upon whom rested the burden of proof, was entitled to opening and conclusion. Except as to the testimony of this one witness, the regular order of the trial was followed in the introduction of evidence, and the plaintiff was given the opening and conclusion of the argument. The examination of a witness for the defense before the plaintiff has opened his case is not usual, except by consent, and unless the plaintiff consents it ought not to be allowed. At the same time we can not see how the plaintiff could have been hurt in the present case. There was a square issue before the jury as to whether or not there had been a release. Moore's testimony was substantially that he had heard plaintiff acknowledge his signature to this release. Under the circumstances we think that the error was not such as to require that the case should be sent back for another trial.

5. There was no error in refusing to allow witnesses who were stockholders in the Cherokee Chemical Company to testify what they would be willing to take for the property involved in the present suit. The question was, not the amount for which they would be willing to sell, but the value of the lease and option. While evidence as to the value of the property would be admissible to aid in determining the value of the lease and option and the damage suffered by the plaintiff, it was proper to exclude testimony as to what one who owned an interest in the property would be willing to take for it.

6. The court allowed Virgil Jones to testify as to the execution and contents of the written release. This evidence was objected to upon the ground that "the writing was the best evidence of its contents, and that the written release had not been introduced, nor had its execution been proven nor a copy established." There had been evidence of the execution of the original, and as to its loss. The witness testified that both he and plaintiff had signed the release, that there were two attesting witnesses, one of whom he did not remember, while the other had no recollection of attesting the paper. Under these circumstances there was no error in allowing secondary evidence of the contents of the release.

7. The court admitted evidence that "there was no consideration

passed from [the lessees] to [the lessor] in consideration of the lease," over the plaintiff's objection "that the instrument was under seal and required no consideration." Not only because the seal imported a consideration, but because it was a joint agreement in which the obligations of either party were a consideration for the promises of the other, the lease was not open to attack as being without consideration. No attempt was made in the defendants' answer to make such an attack upon the lease. This evidence was probably introduced to throw light on the plaintiff's damages, or upon the disputed issue as to whether the plaintiff had, without consideration, relinquished his rights under the lease a few days after its execution. Certain it is that the trial judge treated the lease as valid and binding, and instructed the jury that unless there had been a release, the defendants had been guilty of a breach of the lease. As the validity and binding force of the lease was not left to the jury, this evidence could not have hurt the plaintiff as to this matter, the only one to which the objection goes. Whether the evidence was relevant and admissible on the real issues in the case is a question not raised by the objection made.

8. Under the pleadings the case turned upon the question whether there had been a release or a breach of the contract. The defendants introduced sufficient evidence to authorize the court to submit to the jury the question of release or no release.

9. The court instructed the jury that if there was no release, but a breach of the contract, the plaintiff would be entitled to at least nominal damages. Of this charge the plaintiff complained. While there was evidence sufficient to authorize a finding that the plaintiff had suffered actual damage, such a finding was not demanded, and there was no error in charging as to nominal damages. Further than this, the record discloses that the plaintiff, in a written request to charge, asked the court to instruct the jury that "if there has been no actual damage, the plaintiff can recover nominal damage, which would carry cost."

10. The plaintiff presented to the court a written request to charge on the statute of frauds. There was no error in refusing to give this charge as requested, for a part of it was inapplicable to the case. It included an instruction that "when the original contract is required by law to be in writing, it can not be varied

by a subsequent contract which is not in writing. The new parol contract would not affect the right acquired under the former written agreement." This is in accordance with the decision in *Augusta So. R. Co.* v. *Smith & Kilby Co.*, 106 *Ga.* 864, but it is not applicable to the present case, in which there was no effort to establish any new, modified, or substituted agreement, but an absolute rescission or release. See Clark, Con. 617, 620, 621. The answer of the defendants set up a written release, and there was no evidence of any oral statements of the plaintiff as to this matter, except such as related to the release in writing which defendants claimed had been executed.

11. Error is assigned upon the refusal of the court to charge the jury that " when impossibility of performance is caused by the act of one of the parties, it is equivalent to a breach; . . you look to the evidence to ascertain if by defendants' acts they have made it impossible for them to perform their original contract with the plaintiff; and if so, the plaintiff would be entitled to recover." In the first place this request is faulty in that it completely ignores the main question in the case,—whether there had been a release. Further than this, the plaintiff could not possibly have been hurt by the refusal to give this request; for the court charged even more strongly in his favor, instructing the jury broadly that if there had been no release, the sale of the land by the defendants was a breach of the contract. The court also charged that if the jury found against the defendants on the question as to whether there had been a release, then they should find the amount of damages the plaintiff had sustained, if any ; if none, then to return a verdict for nominal damages.

12. Complaint is made of certain charges of the court as to the measure of damages, and also of the refusal of certain written requests to charge on the same subject. With these we do not deal. The jury, having found that the plaintiff was not entitled to recover at all, did not reach the question of the amount of the recovery. The plaintiff, therefore could not have been injured by any error in the instructions as to the measure of damages.

13. The newly discovered evidence relied upon in the motion for new trial is unimportant. It is that of Childress, who Virgil Jones testified on the trial had attested the release. The newly discovered evidence is simply that Childress has no recollection of

having met plaintiff before September, 1903, and can not remember having witnessed the release. This evidence is negative and without much value. Nor is it newly discovered; for, on the trial of the case, Virgil Jones testified that Childress had stated that he did not remember the paper, but thought he witnessed it. This evidence of Childress would be of no value except to contradict Virgil Jones in his statement that Childress attested the release. For this purpose it is of little value, for not only is it negative, as above stated, but it appears that Childress "has signed a number of papers the contents of which he can not remember." This evidence is not such as to require that the case should be reopened.

14. There was a decided conflict in the evidence, which would have supported a verdict for either party. The trial judge approved the finding of the jury, and, in the absence of any material error of law, this court can not say that he abused his discretion in refusing a new trial.

*Judgment affirmed. All the Justices concur.*