37081. MAXWELL *v.* THE STATE.

DECIDED MARCH 14, 1958.

*Harl C. Duffey, Jr., Fullbright & Duffey,* for plaintiff in error.

*Chastine Parker, Solicitor-General, Horace T. Clary, Assistant Solicitor-General,* contra.

TOWNSEND, Judge. Special ground 1 reads as follows: "Because the court erred in its refusal to grant the movant's motion for continuance of the trial of his case until a subsequent term of court upon the grounds set forth in his application and affidavit properly filed with the court because of the publicity given this case, which was tended to excite the public and influence them against your defendants which said motion was overruled. That the refusal to grant said motion was unquestionably error." The rule that special grounds of a motion for a new trial must be complete within themselves is modified only to the extent of the amendment to Code (Ann.) § 6-901 (Ga. L. 1957, pp. 224, 232) as follows: "Motions for new trial . . . need not set out therein portions of record or transcript of evidence, nor shall it be necessary that the grounds thereof be complete in themselves, but shall point out such parts of the record or brief of the evidence by page number as are necessary to an understanding of the error complained of." The meaning of this is not that special grounds need no longer either contain or refer to pertinent portions of the record, but that such parts of the record or brief of evidence as are designated by page number in the assignment of error shall be considered as incorporated therein. *Brewer* v. *Henson,* 96 *Ga. App.* 501 (4) (100 S. E. 2d 661); *Harris* v. *State,* 96 *Ga. App.* 395 (2) (100 S. E. 2d 120). Since this special ground neither designated any evidence nor mentions that evidence was heard regarding this motion, the ground is not considered as referring to evidence. The motion, which was verified but apparently not introduced in evidence, is general in nature and alleges nothing which would necessarily be prejudicial to the rights of the defendant, and the record shows that the court had already granted one continuance for a two-week period. This ground presents no question for consideration by this court.

Special grounds 5 and 6 refer to excerpts from the charge relating to the test for determining the amount of alcohol in a person's blood stream which is authorized in Code (Ann.) § 68-1625. The charge as quoted in special ground 6, and approved by the trial court, is obviously error. However, the record contains the entire charge, also approved by the trial court, which accurately sets out the law relating to this subject. There is accordingly a conflict between the record and the motion for new trial to this extent. In *Alston* v. *Grantham*, 26 *Ga.* 374 (1) it was held: "In a motion for a new trial, if the rule nisi states the charge differently from the charge itself, as written out by the judge and sent up with the record, this court will be governed by the charge as written." We accordingly presume that the correct charge, as shown by the record, was given, rather than the incorrect charge as shown by the special ground of the amended motion for new trial.

Complaint is made in special ground 7 that the court charged: "If you find . . . that the defendant was . . . at the time of the operation of such automobile, under the influence of intoxicating liquors to the extent that it rendered his operation of such automobile less safe, then he would be deemed to be under the influence of intoxicating liquors." That this is a correct statement of the law see *Bishop* v. *State*, 92 *Ga. App.* 494 (2) (88 S. E. 2d 746) and citations. This ground is without merit.

The evidence shows that the defendant Maxwell and others, including the codefendant Suttles who was tried jointly with him, were engaged in "drag-racing" automobiles on a public highway north of Rome, Georgia; that Maxwell passed another car not engaged in the race and while doing so struck and killed a motorcyclist who was traveling at a reasonable rate of speed on his own right-hand side of the highway. From the diagrams and testimony of witnesses it appears that the highway was 22 feet wide; that it had a broken center line painted thereon; that at the place where the collision occurred there was a shallow curve and a slight hill; that to the right of the center line in the direction the defendant was traveling was also painted a yellow line over 450 feet long and that the point of impact occurred about 135 feet beyond the commencement of this yellow line.

Error is assigned in special ground 8 on the following excerpt from the charge: "I further charge you that, by legislative act, the State Highway Board is authorized to determine those portions of any highway where overtaking and passing, or driving to the left of the roadway would be especially hazardous and may by appropriate signs or markings on the highway indicate the beginning and end of such zones, and when such signs or markings are in place and clearly visible to an ordinarily observant person, every driver of a vehicle shall obey the directions thereof." This charge which is in the language of Code (Ann.) § 68-1638 indicates that the jury would be authorized to find from the evidence (a) that there were signs or markings on the road in question which had been put there by the State Highway Board, and (b) that such signs or markings indicated a no-passing zone. As to (a) the charge was proper, since under Code (Ann.) § 68-1610(c) a sign or marking on a State highway is presumed to have been put there by the authority of the State Highway Department. As to (b), however, the question arises as to whether the existence of a yellow line to the right of the center line is such a sign as all motorists, and especially the defendant, must be presumed to understand to mean that he is in a no-passing zone. In the Uniform Traffic Control Act the legislature (Code, Ann., § 68-1613 through § 68-1615) set out the meanings of certain illuminated traffic-control lights and signals. Nowhere in the law does it establish the meaning of a yellow line painted on a highway. Code (Ann.) § 68-1609 provides for the adoption by the State Highway Board of a manual of uniform traffic-control devices, and Code (Ann.) § 68-1610 provides for the placing and maintenance of such devices (which under Code, Ann., § 68-1504 (6) (a) includes signals and markers) violation of which shall prima facie be deemed violation of the law. The State Highway Board is, however, an administrative body with no constitutional authority to enact rules having the authority of law the violation of which shall be a penal offense. A violation of Code (Ann.) § 68-1638 (passing in a no-passing zone) is a penal offense under Code (Ann.) § 68-9926. The *interpretation* of signs and signals as provided by the manual of the State Highway Board is not a matter of which this court can take judicial cognizance, nor one which it can presume that

every motorist is familiar with, to the extent of imposing penal sanctions for disobedience thereof.

The manual of Uniform Traffic-Control devices provided for in Code (Ann.) § 68-1609 is not in evidence. It may be presumed, however, that such a manual has been adopted by the State Highway Board, it having been directed so to do, and it is to be presumed that public officers have performed their duty, nothing to the contrary appearing. *Alston* v. *Mobley,* 42 *Ga. App.* 98 (2) (155 S. E. 81). It is not to be presumed that the defendant has knowledge of its contents, because it does not itself constitute a law of this State and the law does not provide for the making of such manual available to, or knowledge of the contents thereof by licensed operators of motor vehicles. In view of Code (Ann.) § 68-1610(c) all traffic-control devices placed on the highway are presumed to be placed there by the authority of the State Highway Board of this State. Those which are self-explanatory are such that a violation thereof is a penal offense under Code (Ann.) § 68-9926. However, no law explains the meaning of a yellow line painted on the surface of a highway to the right of the center line, and such a line fails to explain itself. Therefore, in the absence of any properly placed sign explaining the meaning thereof, the crossing of such a yellow line by a motorist to get in the opposite lane of traffic is not of itself a penal offense. If there were any signs at all near this point along this roadway on which the defendant was traveling which read, "no passing when yellow line is right of center", or other like wording, it does not appear from this record. As a matter of fact the judges of this court and the public generally know that a yellow line so placed means a no-passing zone, but it may equally well be that the manual of the State Highway Board provides for other traffic-control devices, the meaning of which is not, as a matter of fact, known to the general public. Accordingly, the question here presented is not what a certain sign is generally understood to mean as a matter of fact, but whether its violation is a crime, as a matter of law. All traffic-control devices placed on the highway in accordance with Code (Ann.) §§ 68-1609 and 68-1610, which are provided for by law, or which are self-explanatory in accordance with their appearance on the highway itself are sufficient to form the basis of a

penal offense in case of their violation. The yellow line shown by the evidence here is not such a traffic-control device. Code § 26-201 provides in part that "a crime or misdemeanor shall consist in a violation of a public law." This defendant was placed on trial for the offense of murder. He was convicted of involuntary manslaughter in the commission of an unlawful act. The charge complained of authorized the jury to find that unlawful act to be the crossing over the yellow line, that being the only sign which the evidence authorized the jury to find that the defendant had violated. The charge complained of in this special ground of the amended motion for new trial was unauthorized and requires reversal.

■ The court further committed error in charging that the punishment for involuntary manslaughter in the commission of an unlawful act is two to five years, thus depriving the defendant of the benefit of a minimum sentence, since the punishment prescribed in Code § 26-1010 is one to five years. Error in charging the minimum sentence to be inflicted is error. *Summerville* v. *State*, 69 *Ga. App.* 553 (2) (26 S. E. 2d 301); *Johnson* v. *State*, 100 *Ga.* 78 (25 S. E. 940); *Thompson* v. *State*, 151 *Ga.* 328 (106 S. E. 278); *Moore* v. *State*, 150 *Ga.* 679 (104 S. E. 907). It may be harmless error where it is obvious that the error would not have affected the sentence determined by the jury. *Daniel* v. *State*, 24 *Ga. App.* 557 (101 S. E. 812). Here the jury tried two defendants jointly as to which the evidence showed that both were engaged in "drag-racing." It gave the codefendant, who did not actually hit the victim, what it understood to be a minimum sentence, and added one year above that to the punishment of the defendant Maxwell. It may be that the jury thereby intended to affix a minimum punishment to the defendant not actually physically involved in the collision, and one year more to the defendant who was. Had the jury been correctly informed as to the punishment, we have no assurance that the sentences imposed would not have been one and two years respectively instead of two and three years as rendered. The error must accordingly be presumed harmful.

■ The general grounds and special ground 2, not being argued, are treated as abandoned. The inaccuracies complained of in special grounds 3 and 4 are not likely to recur on another

trial of this case. Special ground 10, contending that "the court failed to charge the jury the definition in terms of law of involuntary manslaughter," is too vague and indefinite to present any question for decision. *Drane* v. *State,* 147 *Ga.* 212 (2) (93 S. E. 217).

The trial court erred in denying the motion for new trial for the reasons stated in divisions 4 and 5 of this opinion.

*Judgment reversed. Gardner, P. J., and Carlisle, J., concur.*