37422, 37442. DAVIDSON *et al.* v. CONSOLIDATED QUARRIES CORPORATION; and *vice versa.*

Decided March 20, 1959—Rehearing denied April 2, 1959.

*Eugene R. Simons, Merrill Collier,* for plaintiffs in error.
*Allen Post, Thomas B. Branch, Jr.,* contra.

QUILLIAN, Judge. ■ Stone Mountain Grit Company, the plaintiff in error here, will be referred to as the plaintiff, and the defendant in error, Consolidated Quarries, as the defendant.

A very thorough review of the evidence adduced upon the trial is required by the plaintiff's insistence on the general grounds and the defendant's contention that the special grounds of the motion for new trial need not be considered because a verdict in its favor was demanded.

As to the plaintiff's contention that the verdict returned in the defendant's favor was not supported by the evidence, suffice it to say, that not only was the evidence in sharp conflict as to vital and controlling issues on which the plaintiff's right to recover depended, but even the amount that the plaintiff would be entitled to recover if the verdict of the jury should have established the defendant's liability could, under the evidence submitted, have been fixed at various amounts. So it is obvious that a verdict in the defendant's favor was not demanded.

The defendant vigorously and ably urges that a verdict in its

favor was demanded for several reasons. We believe the reasons assigned, most of which were close questions, hard to decide, must be discussed in detail.

First, the defendant insists that the petition sets forth no cause of action and hence a verdict in the plaintiff's favor could not be returned. The determination of the contention does not stem from a consideration of the sufficiency of the petition, but rather upon the doctrine that a judgment not excepted to becomes the law of the case. On August 27, 1956, a solemn judgment was entered by the distinguished trial judge adjudicating that the petition did set forth a cause of action. To that judgment no exception was taken. Later the petition was amended, but not in a material particular. The plaintiff then undertook to renew the general demurrer to the petition as a whole. The trial court very properly overruled the demurrer at that time because he had passed on the question of whether the petition was subject to general demurrer, and his previous order precluded further consideration of that question.

Secondly, the defendant contends that the only measure of damages alleged in the petition was the difference in the contract price of crushed stone or grit, the commodity sold by the defendant to the plaintiff, and its market value at Mt. Airy, North Carolina, on the dates delivery of the grit or stone was required by the provisions of the contract for the breach of which suit was brought, and that the measure of damages was not one available to the plaintiff in fixing its damages. This contention is based on the assertion of the defendant that the evidence demanded the finding that there was a market for the stone or grit at points in DeKalb County, Georgia, the same county of the plaintiff's place of business at which the grit or stone was to be delivered and used. Obviously, two locations in DeKalb County are nearer each other than any place in that county is to Mt. Airy, North Carolina. It also follows that if there was a market in DeKalb County at which the plaintiff could purchase the stone in the open market, and under the conditions general in the traffic in the stone, the difference in the contract price of the stone at the market in DeKalb County and not at the market in North Carolina would be the proper

method of arriving at the damages to which the plaintiff might be entitled on account of the defendant's breach of the contract. Hence, if there was a market available to the plaintiff in DeKalb County at which the plaintiff could without being restricted in or deprived of its rights under the contract have purchased the stone, the plaintiff's proof entirely failed, and a verdict in the defendant's favor was demanded.

There was a sharp conflict in the evidence as to whether various persons and business enterprises in DeKalb County sold the same type of stone and grit as that purchased of the defendant by the plaintiff, but none was offered by the defendant that was conclusive of that fact.

The defendant insists that the proof that it sold stone of the type in question in DeKalb County and offered to sell it to the plaintiff at the market price proved indisputedly the fact that there was a market for such stone in DeKalb County. The defendant wrote the plaintiff a letter reading: "Confirming our telephone conversation with you this morning, we will be glad to fill your order for ten cars of crushed stone, No. 23, at our list price, provided cars are available. Since there has been some discussion between us about a purported contract, we wish it understood that this shipment is made simply in compliance with the above order because we do not recognize the existence of any contract with you."

The defendant enclosed an agreement that it required the plaintiff to sign in accepting the shipment of stone under the terms of the letter. "We agree to the shipment of the above order in accordance with the foregoing terms."

Conceding that the market for such stone obviously existed at the place contended by the defendant, the evidence showed that such market was not open or available to the plaintiff, for the reason that the defendant attached as a condition that the Davidson partnership buying the stone at the market price, surrender the right to hold the defendant responsible for the breach of the contract of sale then existing between the parties, the contract for the breach of which this case was instituted.

Had the plaintiff acquiesced in accepting stone under the terms expressed in the letter and the proposed acceptance, the

effect would have been to waive the defendant's refusal to furnish the stone under the terms of the contract. *Americus Grocery Co.* v. *Roney,* 129 *Ga.* 40 (58 S. E. 462) ; *Eaves & Collins* v. *Cherokee Iron Co.,* 73 *Ga.* 459 (3) ; *Shoup* v. *Elliott,* 192 *Ga.* 858, 861 (14 S. E. 2d 736) ; *Hennessy* v. *Woodruff,* 210 *Ga.* 742 (2) (82 S. E. 2d 859) ; *Haigler* v. *Adams,* 5 *Ga. App.* 637 (63 S. E. 715) ; *Dowling* v. *Southwell,* 95 *Ga. App.* 29 (1, 2) (96 S. E. 2d 903).

Such a requirement was to exact of the plaintiff a price for the stone higher than the market price. The plaintiff was not under a duty to purchase the stone in such circumstances nor was the offer any evidence that there was an open market in DeKalb County at which the plaintiff could purchase the stone.

The third reason given was that as in the cases of *Williams & Templeton* v. *Brewer,* 93 *Ga. App.* 603 (1) (92 S. E. 2d 586), and *Estridge* v. *Janko,* 96 *Ga. App.* 258 (99 S. E. 2d 682), the evidence furnished no criteria by which the amount of any damage due the plaintiff could be ascertained.

There was proof that would have sustained a finding in the plaintiff's favor in some amount. The measure of damages pleaded by the plaintiff was the difference in the purchase price of the grit or stone and its market value as reflected by the price at which it could be bought in the nearest available market, Mt. Airy, North Carolina.

There was an interval, the duration of which clearly appears, between the time when the defendant refused to deliver the stone under the terms of the contract before the plaintiff began manufacturing its own stone. The plaintiff proved the purchase price of the stone at Mt. Airy, North Carolina, and the quantity ordered. The evidence was in conflict as to whether Mt. Airy was the closest market at which the stone could be bought. It is true that stone purchased by the plaintiff from the defendant was not all of the same size. The different sizes of stone were sold at different prices and carried discount to the plaintiff in varying amounts. The market values of the several sizes of stone also varied. Hence, there was a difference in the contract price and the market value of the various sizes of stone. The plaintiff's evidence did not definitely show the size stone ordered

of the defendant. But even so, if not otherwise debarred of recovery, the plaintiff was entitled to damages calculated upon the basis of the defendant's failure to deliver the size stone, the difference between the purchase price and market value of which was less than that of any other which the defendant could be required to furnish and the plaintiff be obliged to accept under the terms of the contract.

In *Donaldson* v. *Cothran*, 60 *Ga.* 603 (1), it was held: "On a motion for a new trial by the plaintiff because the verdict is too small and cannot be sustained by any view of the facts for the sum found by the calculation of the jury: Held, that if it be found by any one calculation authorized by law and evidence, whether it be the same adopted by the jury or not, the verdict can be sustained, then this court will not control the discretion of the presiding judge in overruling the motion for the new trial."

Finally the defendant contends that while the sales contract provided that the plaintiff buy "all of its requirements" of crushed stone and grit from the defendant while the contract was of force, the plaintiff's proof failed to show that the stipulation was complied with, but proved the contrary by admissions of the members of the plaintiff partnership. It is specifically pointed out in the defendant's brief that one of the plaintiff partners testified that since before its contract and during the operative period of the contract of sale, the partnership produced 5 percent of its requirement from stone it had in stock. At this point the construction of the words "total requirement" as employed in the contract and as used by the witness, would, except for other evidence presently alluded to, have become controlling on the question as to whether the plaintiff's proof made out a case.

The only reasonable or logical interpretation of the meaning of the words "total requirement" as related to a contract clause by which the purchaser agrees to buy of the seller his "total requirement" of a commodity to be used in his business, either in the production of a more finished product or by sale to customers, is what the purchaser has to buy to meet his needs in addition to any quantity of the same product that the buyer may have or from time to time in the normal course of business produce from materials that he possesses when the sales contract

is entered into. One would hardly be expected to go into the market and buy materials or finished products that he himself has on hand.

The witness, Davidson, was obviously giving the broader meaning to the words "total requirement", and was not testifying in reference to the quantity of stone the plaintiff partnership was bound, under the terms of the contract, to purchase of the defendant, but the witness evidently alluded to all of the stone that was used in the partnership business.

But the intention of the parties governs this matter. Evincing the intention that the plaintiff's own stone was not to be considered as a part of the total requirement that it was obliged to purchase of the defendant, is a letter from the president of the defendant company to the president of the plaintiff partnership in which it was stated: "I think you will agree that the intention of the original agreement was that we were to supply any tonnage that you did not produce from spalls made from your dimension stone operation at your present site." This letter was dated April 24, 1944.

The letter was erroneously excluded, but must be considered in passing upon the sufficiency of the evidence. *Ellis* v. *Southern Ry. Co.*, 96 *Ga. App.* 687, 698 (101 S. E. 2d 230).

Moreover, throughout the trial it was recognized by the witnesses for both parties that Davidson Granite Company and the plaintiff were departments of the same institution. Indeed, one of the partners, Charles L. Davidson, testified: "The Davidson Granite Company owns these quarries I was talking about, these other deposits. The Davidson Granite Company, that is the same as the Stone Mountain Grit Company." This evidence was corroborated by the testimony of an employee of the defendant. He testified that a part of the shipments made by the defendant to the plaintiff was billed to Davidson Granite Company. The evidence showed that the defendant was aware, while supplying the plaintiff with stone, that Davidson Granite Company crushed and from time to time had the same type of stone.

There was evidence that authorized a verdict for either party, but demanded a verdict for neither.

■ Ground 4 of the amended motion for new trial complains

that the court erred in charging the jury as follows: "Where a party has evidence in his power and within his reach, by which he may repel a claim or charge against him, and omits to produce it, or, having more certain and satisfactory evidence in his power, relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim is well founded; but this presumption may be rebutted." The charge was correct and adjusted to the record. Both sides failed to produce as conclusive and satisfactory evidence as appears to have been within their respective controls.

■ Ground 5 of the amended motion for new trial excepts to the exclusion of the letter dated April 24, 1944, hereinbefore referred to, and reading as follows:

"April 24, 1944.

"Mr. Charles L. Davidson, President,
"Stone Mountain Grit Company,
"Lithonia, Georgia
"Dear Charlie:

"I acknowledge your letter of April 20 and think that your point regarding 'total requirements' is well taken, but I find it difficult to write an informal clause that will clearly explain what we had in mind when we wrote our original agreement in 1939, under which you have developed your business and we have supplied such a substantial tonnage to you.

"The clause pertaining to quantity which you propose would not be satisfactory for the same reason that you suggest, that unforeseen circumstances might cause your company to come under new management. Under that clause we could merely be called upon to supply any tonnage that was not produced at any number of different operations.

"I think you will agree that the intention of the original agreement was that we were to supply any tonnage that you did not produce from spalls made from your dimension stone operation at your present site.

"There is no rush about it, but I would like to talk this over with you to see if we can prepare a satisfactory informal agreement and one that would be flexible enough to let us modify it in the event we carry out our plans in connection with the sep-

aration of fines for the recovery of feldspar. This will require the installation of a dryer at our plant and would undoubtedly result in a change in the price of the #7 stone.

"Yours very truly,

"s/ Art

"G. A. Austin, President

"GAA:I                 Consolidated Quarries Corporation."

We recognize the rule that where a ground alleges that evidence excluded by the court is material to a particular issue, in order for the ground to be complete within itself the pleadings or proof making the issue must be set out in the ground or its placement in the record be designated by page number. If a ground is not complete within itself it will not be considered. *Maxwell* v. *State*, 97 *Ga. App.* 334 (1) (103 S. E. 2d 162); *Emory University* v. *Lee*, 97 *Ga. App.* 699, 701 (104 S. E. 2d 234). However, in the ground of motion for new trial there is an allegation that does not refer to other parts of the record, and when considered with the letter excluded from evidence, shows the letter was admissible and material in evincing the plaintiff's compliance with the contract for the alleged breach of which the suit is brought. This allegation reads: "The failure of the court to admit said documentary evidence deprived movant of its proof that movant had not breached said contract by using some of its own stone for crushed stone to meet its requirements as said document was written permission from defendant to do so and was an admission by defendant that this would not be a breach of the contract by movant." The letter should have been admitted into evidence.

■ Ground 6 excepts to an excerpt from the charge reading: "If you find that, although it may have refused to sell crushed stone to Stone Mountain Grit Company under the terms of the letter of August 20, 1943, yet, Consolidated Quarries Corporation offered to sell crushed stone to the Stone Mountain Grit Company at its list prices, then, I charge you that it became the duty of Stone Mountain Grit Company to minimize its damages, and to buy such stone at the list prices of Consolidated Quarries Corporation, if such purchases would have reduced or minimized its damages."

The charge was error because in effect it instructed the jury that the plaintiff was compelled to accept the defendant's offer to purchase stone and grit upon other terms than those expressed in the valid contract (valid according to a holding of the trial court unexcepted to and by a former adjudication had upon a previous trial), which terms included an admission that the defendant was not liable for its previous breach of the contract. This same matter is discussed in division 1 of the opinion. See *Americus Grocery Co.* v. *Roney,* 129 *Ga.* 40; *Eaves & Collins* v. *The Cherokee Iron Co.,* 73 *Ga.* 459 (3); *Shoup* v. *Elliott,* 192 *Ga.* 858, 861; *Hennessy* v. *Woodruff,* 210 *Ga.* 742 (2); *Haigler* v. *Adams,* 5 *Ga. App.* 637; *Dowling* v. *Southwell,* 95 *Ga. App.* 29 (1, 2), all supra.

However, the defendant urges that the instructions complained of related only to the measure of damages, and since the plaintiff did not recover anything, were not prejudicial. Cases in support of the position are cited: *Woodruff* v. *Bowers,* 165 *Ga.* 408 (4) (140 S. E. 844); *Conant* v. *Jones,* 120 *Ga.* 568 (12) (48 S. E. 234); *Donaldson* v. *Central of Georgia Ry. Co.,* 43 *Ga. App.* 480 (159 S. E. 738). The charge does not relate to the measure of damages, but concerned first the plaintiff's duty to lessen its damages in compliance with Code § 20-1410, and secondly the plaintiff partnership's right of recovery in general.

The defendant, while arguing the general ground in its splendid brief, demonstrated convincingly that the charge complained of directly concerned the plaintiff's right to recover anything. The brief clearly and cogently urged that proof of the offer by the defendant to sell the plaintiff the grit and stone of the kind described in the sales contract from its DeKalb County plant or quarry precluded the right of the plaintiff to recover at all, since there was no proof offered by the plaintiff as to the market value of the stone in DeKalb County, Georgia. The defendant further correctly maintained in the brief that, if there was an open market for the grit and stone nearer the plaintiff's DeKalb County plant (the point of delivery as fixed by the sales contract) than Mt. Airy, the plaintiff could not recover on the basis of the difference in the contract price of the products and the market value plus transportation from Mt. Airy, North Carolina.

Meticulously and thoroughly the defendant's brief points out that the plaintiff did not by its pleadings attempt to establish the damages accruing from the defendant's alleged breach of the contract by any other measure or in any other manner than by showing the difference in the purchase price stipulated in the sales contract and the market value of the stone at Mt. Airy plus transportation costs. The conclusion then reached by the defendant in its own brief is that if the method by which the plaintiff undertook to measure its damages were not appropriate, the proof failed to show a right of recovery. The charge in our opinion was error, prejudicial to the plaintiff and requires the grant of a new trial.

■ The seventh ground assigns as error the following excerpt from the charge: "If you find that, although it may have refused to sell crushed stone to Stone Mountain Grit Company under the terms of the letter of August 20, 1934, yet Consolidated Quarries Corporation offered to sell crushed stone to the Stone Mountain Grit Company at its list prices, then, I charge you it became the duty of Stone Mountain Grit Company to minimize its damages, and to buy such stone at the list prices of Consolidated Quarries Corporation, if such purchases would have reduced or minimized its damages. That means, gentlemen of the jury, that if, and you are the judges of that question, during the term of this contract there was a market for similar stone as to that stone described in plaintiff's petition at Lithonia, Georgia, then, such prices would apply."

The charge complained of was similar to and error for the same reason as the charge complained of in the sixth ground of the motion. It directly related to the plaintiff's right to recover.

The record considered, the charge instructed the jury, that if the defendant offered to sell the grit and stone to the plaintiff on terms at variance with the terms of the sales contract, and upon the condition that the plaintiff waive the defendant's breach of the contract, the offer did not open to the plaintiff a market at which the stone could be purchased in DeKalb County.

■ Ground 8 complains that the court instructed the jury in reference to nominal damages. The record authorized a recovery of compensatory damages in a substantial amount, but, if certain

issues in regard to the measures of damages had been resolved adversely to the plaintiff, an award of only nominal damages would have been authorized.

■ Ground 9 complains of the charge which gave definitions of different kinds of damages. The charge appears to have been applicable to the issues of the case and correct.

■ Ground 10 assigns as error the admission of certain testimony given by J. Keay Davidson, Jr., relative to the cost to the plaintiff of producing gravel of the kind purchased from the defendant.

The burden of proving that the plaintiff's damages had been reduced in any manner was upon the defendant. In order for testimony in this behalf to be admissible, it must have shown with some degree of certainty that the damages were in fact reduced. In *Branon* v. *Ellbee Pictures Corp.*, 42 *Ga. App.* 293 (2) (155 S. E. 923), it was held: "Where the lessor in such a contract brings an action for damages against the lessee for a breach of the contract, and alleges that his damages were the total of the fixed amounts to be paid under the contract for the pictures, and proves upon the trial the execution of the contract and a breach thereof by the lessee, a prima facie case in favor of the plaintiff for the full amount sued for is made out, and the burden is then upon the defendant to prove that the plaintiff could have lessened its damages, and such proof should include sufficient data to allow the jury to reasonably estimate how much the damages could have been mitigated."

The testimony objected to was inconclusive, related to only one phase of the process by which the commodity in question was produced, and hence was, in the absence of other evidence showing the cost involved in other operations necessary in producing the commodity, not admissible, and upon timely objection should have been excluded.

■ Ground 11 shows no error.

■ Grounds 12, 13, and 14 complain of documentary evidence which throws some light on the issues of the case. The admissibility of this evidence need not be now passed upon, because upon another trial it may be offered in another form and a different manner.

■ Grounds 15, 17, 18, 19, 20, and 21 are incomplete and will not be considered.

■ Ground 16 excepts to a charge which submitted to the jury the question of whether during the period from March 14, 1945, to September, 1948, the defendant furnished the total yearly requirements of the plaintiff. The evidence made an issue of fact concerning this matter and the charge can not be held to be error.

■ Ground 22 complains of the admission of the testimony of a witness as to his opinion concerning a matter that was definitely and clearly concluded by an agreement of the parties. The evidence was inadmissible.

■ The bill of exceptions excepts to the overruling of general and special demurrers to the petition. On August 27, 1956, the trial judge overruled the general and special demurrers. No exceptions were taken to this ruling. The petition was amended on October 27, 1957. The amendment was not a material one and did not open the petition to demurrer. After the amendment was filed the defendant undertook to renew the general and special demurrers specifically overruled by the order of August 27, 1956, and made a motion to strike the petition on the same grounds as had been urged by the general demurrer. The trial judge was correct in overruling the renewed general and special demurrers and the motion to strike. The cross-bill of exceptions is without merit.

*Judgment reversed on main bill of exceptions and affirmed on cross-bill. Gardner, P. J., Townsend, Carlisle and Nichols, JJ., concur. Felton, C. J., dissents.*

FELTON, Chief Judge, dissenting. ■ In my opinion the plaintiff in the trial court did not prove a valid order for any amount of crushed stone. The only order that I can find in the record in this case is an order placed by an attorney at law for the plaintiff which is a standing order. Even if the attorney had authority to purchase goods for the plaintiff, the standing order was revocable at any moment; it was not limited to the requirements of the plaintiff and it did not specify what size and price stone was ordered.

■ On September 21, 1945, Consolidated Quarries Corporation

instituted an action under the Georgia Declaratory Judgment Act against Stone Mountain Grit Company, seeking a declaration of its rights under the contract involved in this case. This court on a consideration of the case dismissed the writ of error on the ground that the questions raised were moot, and the court stated in the opinion in that case that the writ of error was dismissed without prejudice as to the questions adjudicated below. See *Consolidated Quarries Corp.* v. *Davidson*, 79 *Ga. App.* 248 (53 S. E. 2d 231). In that case the following interrogatories were made of the jury and the jury made the finding shown at the conclusion of each interrogatory:

"Consolidated Quarries Corporation
vs.
Stone Mountain Grit Company.

No. 11,037
DeKalb Superior Court.

"Interrogatories to the jury.

"1. Did the parties in this case intend the document bearing the date August 20, 1943, signed by C. L. Davidson for the Stone Mountain Grit Company and by G. A. Austin for Consolidated Quarries Corporation to constitute a contract between the Parties?

"Yes.

"2. At the time the letter of August 20, 1943, attached to the original petition as Exhibit 'B', was written, did the parties to this case have in mind the amount of stone that the plaintiff, Consolidated Quarries Corporation, was obligated to sell, and the defendant, Stone Mountain Grit Company was obligated to buy during the period beginning August 20, 1943, and ending September 1, 1948?

"Yes—total requirements.

"3. If the parties to this case did have in mind the amount of stone that the plaintiff, Consolidated Quarries Corporation, was obligated to sell and the defendant, Stone Mountain Grit Company, was obligated to buy during the period beginning August 20, 1943, and ending September 1, 1948, at the time the letter of August 20, 1943, was written, what was such amount?

"20,000 to 80,000 tons yearly.

"4. Did the parties to said agreement of August 20, 1943, contemplate that the defendant, Stone Mountain Grit Company, was obligated to buy from Consolidated Quarries Corporation all of the stone that it would use during the period beginning August 20, 1943, and ending September 1, 1948?

"Yes.

"5. If your answer to the preceding question is yes, then do you find that the parties intended that the contract be divisable?

"Yes.

"6. Did the Stone Mountain Grit Company on August 20, 1943, have an established business requiring the use of crushed stone?

"Yes.

"7. If the answer to the preceding question is yes, were the future requirements of the Stone Mountain Grit Company for crushed stone for its own use capable of approximate estimation?

"Yes.

"8. Did the Stone Mountain Grit Company, on August 20, 1943, have an established business for the re-sale of crushed stone?

"Yes.

"9. If the answer to the preceding question is yes, were the future requirements of the Stone Mountain Grit Company for crushed stone for re-sale capable of approximate estimation?

"Yes.

"10. If the answer to the preceding question is yes, what amount of crushed stone would supply the requirements of the Stone Mountain Grit Company for re-sale?

"Approximately 5% of total requirements.

"11. Did the defendant, Stone Mountain Grit Company, make the offer to the plaintiff, Consolidated Quarries, contained in the letter dated April 19, 1944, that is attached to the original petition in this cause as Exhibit 'C' or was such letter a counter-proposal to a proposal made to the defendant, Stone Mountain Grit Company by the plaintiff, Consolidated Quarries Corporation?

"Counter-proposal.

"12. Did the plaintiff, Consolidated Quarries Corporation, fill all orders that it received from the defendant, Stone Mountain

Grit Company, prior to the receipt by the defendant, Stone Mountain Grit Company of the letter of April 30, 1945, withdrew the offer of the plaintiff, Consolidated Quarries Corporation contained in the document of August 20, 1943?

"No.

"V. G. Shearer, Foreman.

Sept. 5, 1947."

The evidence in this case did not show facts from which a jury could ascertain what the parties meant in the contract by the "plaintiff's requirements". It was decided in the declaratory judgment action what the requirements of the plaintiff were. The findings in the declaratory judgment action, with one exception, were not binding on the court in the instant case. The exception referred to is the finding that the contract was a binding one between the parties. This question was involved in the question whether the petition was subject to general demurrer and the judgment overruling the general demurrer controls as to the proposition that the contract between the parties was binding. Any other ruling in the declaratory judgment action, other than is involved on a ruling in a demurrer, was not binding in this action. It is true that the judge, in ruling on the demurrers to the redrafted petition on August 27, 1956, made some statements in his order with reference to the declaratory judgment action which were not germane to his ruling on the demurrers, and the failure to except to these matters which were not germane to the ruling on demurrers does not bind the defendant in this case. Said judgment is set forth by the majority on motion for a rehearing and need not be quoted here. The plaintiff in error contends that all the findings in the declaratory judgment action are binding on the parties in this case for the reason that the findings have not been reversed or set aside. I think that the principle of law that where an appellate court dismisses a writ of error because the questions involved have become moot, the rulings of the court reviewed are not binding on the parties is as basic and fundamental as the principle that an appellate court will not decide moot questions. The philosophy of the first principle stated above is that in such cases the appealing party, through no fault of his own, has not had the

right to have the appellate court review, decide and determine the questions brought in issue by the appeal. I think that the legal consequence of such a dismissal of a writ of error is that the judgments of the court whose judgments are being reviewed are not binding on the parties whether the appellate court so specifically states in its judgment or opinion, (or both) or not. Restatement of the Law, Judgments, 315, § 69: "Where a party to a judgment cannot obtain the decision of an appellate court because the matter determined against him is immaterial or moot, the judgment is not conclusive against him in a subsequent action on a different cause of action." 157 A.L.R. 1043; 34 C.J. 790, § 1207, 893, § 1300; 50 C.J.S. 74, §§ 640, 641; *Mayor &c. of Savannah* v. *Monroe*, 22 *Ga. App.* 190 (95 S. E. 731). But whatever the legal consequence of the dismissal of a writ of error because of moot questions, the appellate court assuredly has jurisdiction and authority to give direction to the effect that the judgments of the trial court are not binding. *Henderson* v. *Hoppe*, 103 *Ga.* 684 (30 S. E. 653); *Gallaher* v. *Schneider*, 110 *Ga.* 322 (35 S. E. 321); *Davis* v. *Mayor &c. of Jasper*, 119 *Ga.* 57 (45 S. E. 724); *Bigham* v. *Yundt*, 158 *Ga.* 600 (123 S. E. 870); *Blackwell* v. *Farrar*, 209 *Ga.* 420 (73 S. E. 2d 203), and cases cited. In such a case the dismissal on the ground of moot questions itself becomes binding. *Mayor &c. of Savannah* v. *Monroe*, 22 *Ga. App.* 285 (3) (96 S. E. 500). So my conclusion in this case is that none of the rulings in the case mentioned at the beginning of this division of the opinion, except the ruling that the contract was binding, is binding.

The ruling of the Supreme Court in *Northern Assurance Co., Ltd.* v. *Almand*, 210 *Ga.* 243 (78 S. E. 2d 788) is not authority for a contrary conclusion. The point in that case is a rather difficult one to understand. The decisions of this court and the Supreme Court speak for themselves. When all is said and done, the matter resolves itself into the question whether this court or the Supreme Court correctly interpreted the ruling of this court in *Almand* v. *Northern Assurance Co., Ltd.*, 87 *Ga. App.* 193 (73 S. E. 2d 101). This court interpreted its ruling as one that the lower court did not decide the case on its merits, and that this court dismissed the writ of error on its own motion because

the matter to be decided was moot. The Supreme Court interpreted our ruling to mean that this court dismissed the writ of error because the lower court ruled on the merits and that this court dismissed the writ of error on the merits of the appeal and not because this court was faced with a moot question. No matter which court is right the cases involved do not hold contrary to what is here expressed.

■ I think the evidence demanded the finding that there was a market for the stone in DeKalb County and I do not think that the defendant's letter to the plaintiff stating, "Confirming our telephone conversation with you this morning, we will be glad to fill your order for ten cars of crushed stone, No. 23, at our list price, provided cars are available. Since there has been some discussion between us about a purported contract, we wish it understood that this shipment is made simply in compliance with the above order because *we do not recognize the existence of any contract with you,*" (emphasis added) in which letter the defendant suggested or required the plaintiff to sign the following statement, "We agree to the shipment of the above order in accordance with the foregoing terms", means what the majority holds it does. I do not think that the acceptance of the order on condition that it was agreed by the plaintiff that the order would be accepted in accordance with the foregoing terms means that in so doing the plaintiff acknowledged that no valid contract existed. In view of the divergence of opinion between the parties as to whether a valid contract existed or not, it was the intention of the defendant to make it clear that it was shipping goods under the list price and was not recognizing the contract as a valid one. The only condition required to be accepted in ordering stone was that the defendant *did not recognize the existence of a contract* and *not that no valid contract in fact existed.* This did not prevent the plaintiff from ordering stone from the defendant at list or market price and from holding the defendant liable for the difference between the contract and market price if it finally turned out that the contract was binding. Furthermore, the evidence shows that the plaintiff sold crushed stone in the open market itself and this was sufficient to show a market price in DeKalb County. Even if this

is not true, the plaintiff would be held to the market in DeKalb County established by the defendant unless the plaintiff placed valid and complete orders for crushed stone with the defendant at the market price and the defendant refused to ship it.

■ The evidence demanded a verdict for the defendant because there was no evidence from which the jury could with any degree of certainty ascertain the amount of damages due. *Williams & Templeton v. Brewer*, 93 *Ga. App.* 603 (1) (92 S. E. 2d 586); *Estridge v. Janko*, 96 *Ga. App.* 258 (99 S. E. 2d 682). The plaintiff made no effort to purchase its requirements of crushed stone at any market price anywhere. The evidence does not disclose what size stone the plaintiff ordered from the defendant, if it ordered any, or at what times, so as to show by which of the defendant's price lists the damage was to be arrived at. The defendant's price lists showed ten sizes of stone at several prices. For example, the following is a price list dated January 1, 1941:

"Crushed Stone

Price list—effective January 1, 1941.

Prices are per net ton in open cars F.O.B. Lithonia, Ga.

Sizes are Georgia State Highway Specifications.

Modified to conform with specifications dated Jan. 1, 1942.

| Size | Grading | Price |
|------|---------|-------|
| 2 | 2″ -1″ | $1.10 |
| 4 | 1¼″- ⅜″ | 1.10 |
| 7 | ⅜″-10 mesh | 1.10 |
| 46 | 1″ - 4 mesh | 1.10 |
| 246 | 2″ - 8 mesh | 1.10 |
| 356 | 1½″- 4 mesh | 1.10 |
| 5 | ¾″- ⅜″ | 1.20 |
| 6 | ½″- 4 mesh | 1.20 |
| 56 | ¾″- 4 mesh | 1.20 |
| 10 | Minus 10 mesh | .30 |
| Box car loading—extra net per ton | | .15 |
| Truck loading—extra per net ton | | .05 |

Special sizes to order"

The contract allowed plaintiff 30 per cent discount on all sizes but No. 7 and the discount on it was 10 percent. The defendant had four price lists covering the period involved in this case:

one dated January 1, 1941; one dated June 15, 1945; one dated January 1, 1947, and one dated January 1, 1948. The petition specifically alleged that the plaintiff ordered its requirements from the defendant during the entire period involved and there is not sufficient evidence to support the allegations in order that the jury could with any degree of certainty determine the damage suffered. For instance, if a great majority of stone ordered by the plaintiff was No. 7, the damage for failure to deliver would be much less than if some other sizes were ordered, because on the *first* the discount under the contract was only 10 percent while on all other sizes it was 30 percent.

■ If we assume that the finding in the declaratory judgment action as to what the plaintiff's requirements were, between 20,000 and 80,000 tons a year, is binding in this case, what this finding means is beyond me. It would seem to mean that the requirements could be shown by the plaintiff to be somewhere between 20,000 and 80,000 tons a year. If it does mean that, there is no evidence in this case from which the jury could determine on any figure in between 20,000 and 80,000 tons a year.

ON MOTION FOR REHEARING.

QUILLIAN, Judge. The defendant in error by way of motion for rehearing protests the ruling made on the cross-bill of exceptions. The protest is predicated on the holding of the Supreme Court in *Hendrix* v. *Pirkle*, 208 *Ga.* 751 (69 S. E. 2d 267). That case is parallel neither factually nor upon principle with the case sub judice.

There was an order in the *Hendrix* case sustaining certain special demurrers and allowing the petition to be amended within 10 days. Obviously, the judgment was not a final judgment to which exception could be taken.

The judgment of August 27, 1956, in the instant case, is final and overrules the defendant in error's general and special demurrers to the petition. The judgment reads: "It appearing to the court that on February 20, 1956, the court entered an order that the plaintiff redraft and consolidate its petition, as amended, and that the defendant redraft and consolidate its demurrers to plaintiff's petition, as redrafted and consolidated; and that pursuant to said order, plaintiff and defendant each redrafted and

consolidated and re-wrote their pleadings, and filed the same, and it appearing to the court that on June 27, 1956, the court entered an order upon the defendant's said rewritten demurrers directed to plaintiff's said rewritten petition, and in said order the court sustained certain special demurrers to count one of plaintiff's petition as re-written, and allowed plaintiff twenty (20) days within which to amend; and

"It appearing to the court that the time allowed for amendment has now expired; and

"The court having, after the expiration of the time for amendment allowed in said order, considered the petition and the pleadings for the purpose of making a final ruling upon the defendant's demurrers and upon the sufficiency of the petition:

"It is the judgment of the court, that all issues between the parties to this suit relating to the subject matter of this suit were determined, and adjudicated and concluded between the parties in this suit, by virtue of the pleadings in Case No. 11,037 in DeKalb Superior Court, and by the verdict and final and unreversed judgment therein rendered, excepting only the issue as to the actual quantities of crushed stone constituting the requirements of petitioners during the contract period, and the issue as to the amount of damages, if any, due the petitioner by the defendant, because of defendant's failure to supply said quantities of crushed stone as required by the contract of August 20, 1943, and that the only issues of fact before the court in above styled cases, are (1) the issues as to the actual quantities of crushed stone constituting the requirement of the petitioner during the contract period. (2) The issue as to what proportion of those requirements were furnished by the defendant. (3) The issue as to whether petitioner was damaged, by the failure of defendant to furnish those requirements or part of those requirements, if it is found that defendant did not furnish all of such requirements, and if damaged, then in what amount.

"It is ordered, considered and adjudged by the court:

"(1)   Plaintiff's motion to strike certain paragraphs or grounds of defendant's rewritten demurrers is denied and overruled on each and every ground thereof.

"(2)   Defendant's re-drafted and consolidated special demur-

rers Nos. 12, 13, 13(a) and (b), 14, 15, 16, 18(a) and (b) and 29 to count one of plaintiff's petition as re-drafted and consolidated are each sustained.

"(3) All other of defendant's demurrers, both general and special, are each overruled.

"Ordered, this 27th day of August, 1956.

> Clarence Vaughn, Judge
> Superior Courts
> Stone Mountain Circuit."

"The defendant demurred to plaintiff's petition, as amended, upon the ground that it set forth no cause of action against him. The court overruled the demurrer; and to this judgment no exception was taken by the defendant. This was an adjudication that the petition set out a cause of action against the defendant." *Copeland* v. *McElroy,* 49 *Ga. App.* 490, 491 (176 S. E. 67).

The amendment came about 14 months subsequent to the judgment, and merely increased the amounts sued for, which was not of a material nature.

An amendment to a petition is not of a material nature unless it materially changes the cause of action; that is makes a recovery obtainable upon different principles or by different procedure from that upon which recovery under the petition as originally drawn depended. *Maryland Cas. Co.* v. *Dobson,* 57 *Ga. App.* 594 (1, 2) (196 S. E. 300).

The defendant in error in its motion for new trial apparently overlooked certain facts in the record, principles and precedents that are controlling and require the holding made in the original opinion.

"An amendment to a petition, made after the expiration of 30 days from service of the petition, does not open the petition to special demurrer where, if the petition was defective as contended, the defect was apparent before as well as after the amendment. *Pierce* v. *Harrison,* 199 *Ga.* 197, 199 (5) (33 S. E. 2d 680)." *Dixie Broadcasting Corp.* v. *Rivers,* 209 *Ga.* 98 (2a) (70 S. E. 2d 734).

In *LaHoste* v. *Yaarab Mounted Patrol,* 89 *Ga. App.* 397, 401 (79 S. E. 2d 570) it was held: "An immaterial amendment does not open the petition anew to demurrer. Code § 81-1312; *Pritch-*

ett v. *Ellis,* 201 *Ga.* 809 (41 S. E. 2d 402); *Central of Ga. Ry. Co.* v. *Waldo,* 6 *Ga. App.* 840 (65 S. E. 1098). . . Where a petition is amended by setting up foreign statutes which only amplify and aid the right already claimed in the original petition, the amendment does not materially change the cause of action. *Missouri State Life Ins. Co.* v. *Lovelace,* 1 *Ga. App.* 446 (58 S. E. 93). Also, the amendment did not alter or change the mode and nature of the defense available to the defendant as to the allegations of the original petition. In this connection see *Quillian* v. *Johnson,* 122 *Ga.* 49 (49 S. E. 801); *Southern Bell Tel. Co.* v. *Parker,* 119 *Ga.* 721 (47 S. E. 194); *Kelly* v. *Strouse,* 116 *Ga.* 872 (43 S. E. 280); *Gibson* v. *Thornton,* 107 *Ga.* 545 (33 S. E. 895)."

In *Ganner* v. *Wolport,* 84 *Ga. App.* 876 (1, 2) (67 S. E. 2d 824) it was held: "An amendment to a petition, made after the first term, does not open the petition to special demurrer where, if the petition was defective as contended, the defect was apparent before as well as after the amendment. . . Where the general demurrer and the three special demurrers to the petition as first amended were overruled, thereby adjudicating that the petition set out a cause of action, such judgment, not being excepted to, fixed the law of the case; and where the second amendment was immaterial insofar as having the effect of reopening the whole petition to demurrer, it was error for the court to sustain the renewed and additional demurrers to the petition after the second amendment thereto was filed, and to dismiss the petition."

The amendment in the present case, offered 14 months after the petition had been adjudicated to set forth a cause of action, did not alter the petition by changing the theory upon which recovery was sought, nor did it vary in any manner the basis of the original cause declared upon; or require additional pleading by the defendant to meet the averments of the amendment. The amendment was not of a nature that opened the petition to the grounds of demurrer that had already been passed upon by the trial judge.

*Gardner, P. J., Townsend, Carlisle, and Nichols, JJ., concur. Felton, C. J., dissents.*